—o·o·o—

THE PEOPLE, *ex rel.* Jefferson T. Raplee, *vs.* LEANDER REDDY and others, Assessors of the town of Milo, in the county of Yates.

The relator, being assessed for $8000 upon his banking house, $25,000 upon his capital stock, and $28,000 for personal property, including surplus earnings, less the value of his banking house, appealed from the assessment, and testified before the assessors that he had no personal property liable to taxation, except the capital stock of his bank, amounting to $25,000; that $10,000 of that amount was invested in United States six per cent bonds; and that his banking house formed a part of the capital of his bank. *Held* that it was the duty of the assessors, upon these facts, to amend their assessment roll by striking out $10,000 for the amount of the government securities, not taxable, forming a part of the capital of his bank.

*Held, also,* that as they had assessed his banking house as real estate, the amount of its valuation should also have been stricken out from the amount of the capital stock of his bank.

And that the whole amonnt assessed for personal estate, $25,000, should also have been stricken out; it being the duty of the assessors to take the relator's statement under oath, upon that point, as true.

The provision, in the act of 1851, amending the statute relating to assessments and the collection of taxes, taking away the conclusiveness of the affidavit before required, and making it the duty of the assessors upon an application being made to reduce the value of real and personal estate, to examine the applicant under oath touching the value of his property, and then to fix the value thereof as shall be just, does not give the assessors any right to fix such value arbitrarily or capriciously.

They act judicially, in fixing such value, and are called upon to pass upon the evidence produced before them; and when they have no ground in such evidence, to fix a valuation different from that sworn to by the applicant for a reduction, they are bound to take and follow his statement under oath, as formerly.

Where assessors, in their return to a certiorari, state that they have delivered the assessment roll, duly certified, to the supervisor of the town, and that the same is not in their possession or control, the court has no power to render any judgment that can affect the assessment roll, or correct any errors; although it is satisfied there was clear error in the proceedings.

The only remedy of the person aggrieved, under such circumstances, *it seems,* is by an action against the county, to recover back the amount of the tax improperly assessed and levied.

CERTIORARI to remove proceedings in relation to an assessment upon the real and personal property of the relator; the particular error alleged in the writ being the refusal of the assessor to reduce the assessment down to $15,000. The assessors alleged in their return that they were duly elected assessors of the town of Milo, in the county of Yates, for the year 1864, and qualified as such. That before proceeding to make the assessment in said town, they divided the town into three assessment districts, assigning one of said districts to each. That the district in which Raplee, the relator, resided at the time, was assigned to Leander Reddy, one of their number, to call upon the inhabitants of said district, and inquire of each in relation to the property owned by them respectively, liable to be assessed. That in discharge of said duty, Reddy called upon the said Raplee, at his place of business in said town, and inquired of him what personal and real property he had liable to be assessed;

whereupon said Raplee informed said Reddy, that the capital stock of his bank was twenty-five thousand dollars. That twenty thousand dollars of that was invested in government, or United States bonds, which was exempt from taxation ; and that the residue was invested in real estate ; the same being his banking house, in Penn Yan. Whereupon they, the said assessors, assessed the said Jefferson T. Raplee, upon the roll, made by them as such assessors, as follows :

| | | |
|---|---:|---:|
| Raplee, Jefferson, to banking house and lot, . | | $3,000 |
| Upon a valuation, equal to amount of capital stock paid or secured, . . . . . . . | | 25,000 |
| Personal property, including the surplus earnings of bank, . . . . . . . | $28,000 | |
| Less banking house, . . . . . . | 3,000 | |
| | | 25,000 |

That after completing said assessment roll so made by them, they duly gave notice of the time and place when and where they would meet to hear appeals from said assessments, so made by them. That in pursuance of said notice, they met on the 16th day of August, 1864, at the place mentioned in said notice, for the purpose of hearing appeals. The said Jefferson T. Raplee then and there appeared before them in person, and by attorney, stating that he appealed from said assessment, whereupon the said Raplee was duly sworn and testified as follows :

" I have no personal property liable to taxation, except the capital stock of J. T. Raplee's bank, amounting to $25,000. I claim exemption on $10,000 of that, on the following ground : That the amount of said capital is lodged United States with the banking department, as security, in six per cent bonds, of 1881. I claim also an exemption on the banking house, which forms a part of the capital of the bank, assessed at $3,000. There are no surplus earnings of the bank. The bank has earned something during the last year."

That the said Raplee, upon his examination, was asked the following question by the chairman: Question. "What amount has the bank earned during the last year?" To which question said Raplee replied, that had nothing to do with the question, and declined to answer. On the question being repeated by the chairman several times, and no answer being given, it was remarked by one of the other assessors that it was not necessary further to press said question, whereupon said Raplee remarked that he would answer the question if the board of assessors decided that he must. The question was then dropped and nothing further said upon the subject, and no answer was given to the question. That afterwards, upon consultation, a motion was made to reduce the assessment of the said Raplee, on his personal property, ten thousand dollars, which was objected to by the chairman. The motion was carried and the assessment of said Raplee for personal property was reduced by them from twenty-five thousand dollars to fifteen thousand dollars. That after correcting the assessment roll the assessors duly made and verified their certificate on said roll, and delivered the said roll, with the certificate thereon, to John T. Sheetz, supervisor of the town of Milo. That said roll is not now in the possession or under the control of the assessors, and has not been in their possession or control since the coming to them of the writ of certiorari. And that they had no control over said roll, or power or authority to correct the same in any way or manner.

*S. H. Wells,* for the relator.

*D. B. Prosser,* for the respondents.

*By the Court,* E. DARWIN SMITH, J.   The return to the writ of certiorari in this matter presents a clear case of error in the final determination of the assessors. They state that

in their primary assessment roll they assessed the relator as follows :

| | |
|---|---:|
| For banking house and lot, . . . . . . | $3,000 |
| Upon a valuation equal to the amount of capital stock paid in or secured, . . . . . | 25,000 |
| Personal property including surplus earnings of bank, . . . . . . . . . . 28,000 | |
| Less, banking house, . . . . . . . 3,000 | |
| | 25,000 |

That after completing the said roll they gave the notice required by the statute fixing a time when they should meet and hear appeals from said assessment, and that on the day so fixed the relator appeared and stated that he appealed from said assessment; and he made oath and testified before the said board of assessors that he had no personal property liable to taxation, except the capital stock of his bank, amounting to $25,000. That $10,000 of that amount was invested in United States six per cent bonds ; and that his banking house, assessed at $3,000, formed a part of the capital of his bank. He was asked some questions by the board, but in no respect varied his statement in regard to his property, or furnished or gave any evidence showing or tending to show that he had any other property liable to taxation.

Upon this statement it was the clear duty of the assessors to have amended their assessment roll by striking out $10,000 for the amount of the government securities not taxable, forming part of the capital of his bank ; and as they had assessed his banking house as real estate, the amount of its valuation should also have been stricken out from the amount of the capital stock of his bank ; and the whole amount assessed for personal estate of $25,000 should also have been stricken out. He testified that he had no personal property liable to taxation except the capital stock of his bank ; and the board of assessors, I think, were bound to take his statement under oath on that point.

Under the assessment law, as it stood under the revised statutes and before the amendment of 1851, the assessors were bound to correct their assessment roll before appeal by any person assessed, in accordance with his affidavit made and produced to them in conformity with the statute. (*Livingston* v. *Hollenbeck*, 4 *Barb.* 9. *The People* v. *The Supervisors of Westchester Co.*, 15 *id.* 615.) The act of 1851, amending the statute relating to assessments and the collection of taxes, (*see Session Laws of* 1851, *ch* 176, *p.* 334,) takes away the conclusiveness of the affidavit before required, and makes it the duty of the assessors, when an application is made by any person, to reduce the value of his real and personal estate, to examine such person under oath touching the value of his property, and after such examination they shall fix the value thereof as they may deem just. This provision does not give the assessors any right to fix such value arbitrarity or capriciously. They act judicially in fixing such value, and are called upon to pass upon the evidence produced before them ; and when they have no ground in such evidence to fix a valuation different from that sworn to by the person applying for such reduction, they are bound, I think, to take and follow his statement under oath, as much so as the assessors were formerly required to fix such value at the sum specified in the affidavit required in such cases by the 15th section of article 2d, chapter 13 of part first of the revised statutes.

The object of this amendment was to allow the assessors to examine the person appealing from their assessments, and to subject such person to an oral examination in respect to his property, such as the assessors might think proper to make. But the assessors must act upon the evidence before them like all other officers acting in a judicial capacity, and fix the valuation at a just sum, such as will be warranted by the evidence.

In this case I think it is very clear that there was nothing in the evidence before the assessors to warrant them in re-

taining the assessment of the personal property of the relator at $25,000, besides the other errors above specified.

The only difficulty I have in the case is upon the question whether we can give any appropriate relief to the relator in this proceeding. The certiorari was directed to the assessors, and was a proper writ to bring the erroneous determination of the assessors before us for reversal or correction. If it had issued while the roll was in the hands of the assessors, it would have arrested it in their hands and stayed all proceedings upon it. But they return that after correcting said roll as stated, they duly made and verified their certificate on said roll, and delivered the same with the certificate therein to the supervisor of said town of Milo, and that the said roll is not in their possession, and has not been in their possession or control since the coming to them of the said writ of certiorari.

The writ of certiorari brings up, or is always supposed to bring up, the record of the inferior tribunal to which it is addressed. The judgment to be rendered in this court in such cases is to affirm or reverse, modify or correct the record. It is a judgment upon the record, and if the record were before us we might direct our clerk to correct the roll or send it back to the assessors for correction. When it appeared upon this return that the roll had been delivered to the supervisor, we could have directed a writ of certiorari to him, or to the board of supervisors if the roll had been delivered to such board, to bring the same before us. The writ would reach the record and bring it up wherever it might be, until it had passed beyond our power to review the assessment by its delivery to the collector with the warrant of the board of supervisors annexed after the extension of the tax for its collection.

Although the assessors have made returns to the writ, stating in full their proceedings as a board of assessors, and we are satisfied that there was clear error in such proceedings,

I think we can render no judgment that can now affect the assessment roll, or correct such errors. (*The People v. The Supervisors of Allegany*, 15 *Wend.* 198. *The People* v. *The Mayor of N. Y.*, 2 *Hill*, 9. *The People* v. *The Supervisors of Queens Co.*, 1 *Hill*, 195.)

The relator has, I think, now no remedy except by action against the county for the amount of the tax improperly assessed and levied.

I think we can render no judgment on this writ, but must dismiss or quash the same.

Ordered accordingly.

[MONROE GENERAL TERM, March 7, 1865. *James C. Smith, Johnson* and *E. Darwin Smith,* Justices.]