THE PEOPLE, *ex rel.* The American Linen Thread Company, *vs.* ALONZO HOWLAND and DAVID C. WALLACE, Assessors of the Village of Mechanicville.

Where assessors assessed the real estate of a corporation at $125,000, and on application refused to correct the assessment, although the highest valuation fixed for such real estate, by the uncontradicted evidence before them was but $45,000; *Held* that they should have corrected the assessment, by striking out the sum of $125,000 as the valuation of the real estate, and inserting the sum of $45,000 in its place.

*Held, also,* that after having deducted from the amount of capital paid in, or secured, such sum of $45,000, for the value of the real estate, it was proper for the assessors to assess the remaining capital as personal estate, at its actual value, as shown by the evidence before them.

Assessors act in a judicial capacity, in hearing parties aggrieved, and must be governed by the evidence presented to them on an application to correct the assessment.

Where, upon an application to correct an assessment, there is no evidence before the assessors, on the subject of value of the real estate assessed, except the affidavits produced by the owner, they, if uncontradicted, must be considered controlling and conclusive.

WRIT of certiorari for the purpose of correcting an alleged erroneous assessment, made by the defendants as assessors, against the real and personal property of the relator, in the village of Mechanicville, for the year 1871.

The relator was a stock corporation with a capital of $70,000.

The assessors for the year 1871, assessed the relator

| | |
|---|---|
| for real estate, . . . . . . . . | $125,000 00 |
| Personal property, . . . . . . . . | 29,786 81 |
| Total, . . . . . . . . . | $154,786 81 |

They also, in the assessment roll, stated the capital

| | |
|---|---|
| paid in, and secured to be paid in, at | $70,000 00 |
| And deducted amount to be paid out for real estate at . . . . . . . . . | 40,213 19 |
| Leaving personal estate, in stock, . . | $29,786 81 |

The return to the writ shows, that at the time the defendants met to hear the parties aggrieved, and to correct the assessment roll, the relator appeared before them and presented affidavits which showed, 1st. That the real estate belonging to the corporation was worth not to exceed $45,000, but cost $40,213.19 ; and 2d. That the capital stock of the company was worth but 80 per cent of its nominal amount; and claimed to have the assessment against the relator reduced accordingly ; and further, that in case no reduction in the assessment of the real estate was made, the assessment for personal property should be entirely stricken from the roll; inasmuch as the assessed value of the real estate, would, in such case, exceed the actual value of the capital stock of the company, as fixed and ascertained by the assessors. The return also states, that although Lewis E. Smith, the treasurer of the relator, swore, before said assessors, that the stock of said linen thread company had been worth only 80 per cent of its par value since February 16th, 1871, yet, " we, the said assessors, from our knowledge of said company, and its property and affairs, and from the fact of its having, on the first day of January, 1871, declared a dividend of 10 per cent upon its stock; and from the fact that one of them having been repeatedly informed since February 16th, 1871, and before June 8th, 1871, by different stockholders of said company; and, from the said Howland having heard the said Lewis E. Smith, since the month of February, 1871, and repeatedly prior to that time, and during the past year, and other stockholders of said company, say, that the stock of said company was worth at least par, or one dollar for each dollar of its capital stock; and from the affidavits, then and there before them, and annexed and made by the persons thereafter mentioned, did not believe, or credit, the sworn statement of Lewis E. Smith, as to the value of said stock."

That on the said 8th day of June, 1871, the said as-

sessors had before them, and in their possession, the annexed affidavits of several persons who were named, who severally swore to the value of the real and personal property of the said company, and that they had said affidavits before them, and in their possession, before, and at the time, they passed upon and decided the application of said company for a reduction of its assessment.

It also appeared that the attention of the relator, or his counsel, was not called to these affidavits, or called to the fact that they were then present for use, or used, upon the hearing before the assessors on the application for a reduction of the amount of the assessment.

These affidavits showed the real estate to be worth $125,000, and had been used upon a motion made by the relator against the defendants for a mandamus. The defendants refused to reduce, or alter, the assessment roll, and upon the application of the relator the writ of certiorari was issued.

*A. Pond*, for the relator.

I. Assuming that the assessment against the relator, of $125,000 for real estate, is correct and not to be reduced, then the assessors erred in refusing to strike the assessment against the relator for personal property ($29,786.81,) entirely from the roll. 1st. The law relating to the assessment of the capital stock of corporations expressly provides that it shall be "assessed at its actual value, after deducting the assessed value of its real estate." (*Session Laws* 1857, *ch.* 456, § 3. 3 *R. S. p.* 373, § 3, *Edm. ed.*) The scheme established by the statute above cited, and that providing for the assessment of the real estate of corporations, (1 *R. S.* 363, § 9, *Edm. ed. and p.* 362, § 6,) is as just as it is simple. It contemplates the assessment of the real estate of corporations, at its "actual value," and then the deduction of that amount from the value of the entire capital stock of the corporation, which

it was supposed would exceed the real estate in value, and that the balance only of such amount should constitute the sum that should be assessed against it, for its capital stock. In this way the whole of the property both real and personal of the corporation would be assessed. True, the legislature did not anticipate, what the defendants in this case seem to have ascertained, namely, that there would be a corporation whose real estate alone would be assessed at the sum of $125,000, while its entire capital stock, which embraces both real and personal property, would be worth less, and but $70,000; in other words, that the whole would be worth less than one of the several parts. The legislature therefore only provided that the "assessed value" of the real estate should be deducted from the capital stock, and that the balance only of such capital stock "shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county. (3 *R. S. p.* 373, § 3, *Edm. ed.*) But in this case, inasmuch as the defendants had assessed the real estate at a sum which exceeded the value of the entire capital stock, as already shown, it was impossible in this instance, for the defendants literally to carry out and comply with the direction of the statute in that regard, and deduct the greater from the lesser sum. The only possible method left to carry out the manifest intent of the statute, and thereby avoid a double assessment, was to strike from the roll the entire assessment thereon for personal estate, or capital stock, against the relator. It was claimed, by the relator, that this should be done, but the defendants refused to allow the claim, and left on the roll an aggregate assessment against the relator of $154,786.81, when the entire value of its capital stock, according to their own finding, amounted to only $70,000. To reach this result, the defendants deducted from the capital stock of the corporation only the "cost" of the real estate, ($40,213.19,) instead of striking off the assessment entirely, as claimed

The People *v.* Howland.

by the relator, because the "assessed value" exceeded the capital stock. The assessment is therefore excessive, and is an outrage upon the rights of the relator, and should be corrected by having the assessment for capital stock stricken entirely from the roll. (3 *R. S.* 373, § 3, *Edm. ed. See instructions of Hillhouse, comptroller, in note to* 48 *Barb.* 190 ; *The People* v. *Reddy,* 43 *id.* 539 ; *approved in The People* v. *Ferguson,* 38 *N. Y.* 89.) 2d. But the defendants insist that the decision of the Court of Appeals in the case of *The People* v. *The Board of Assessors,* (39 *N. Y.* 81,) is an authority for the course pursued by them here, and required them to deduct only the "cost" of the real estate, instead of the "assessed value" thereof, as claimed by the relator. The answer to that is this, that whether that case was properly decided or not, there is a palpable distinction between it and the present. In that case, the corporation owned a large amount of real estate, which was located outside of the territorial limits of the assessors, and consequently without their jurisdiction; while here, it is all located within those limits, and hence subject to their jurisdiction. The decision in that case manifestly turned upon the point suggested, and because, unless the "cost" of all the real estate which had been purchased and paid for by the corporation, whether situated within or without the jurisdiction of the assessors, was deducted from the capital stock in that case, the assessment and consequent taxation would have been nearly double what it should have been. While here, if the statute rule is not applied, it leads inevitably to the same result, namely, a more than double assessment and taxation against the relator. But whether the decision in *The People* v. *The Board of Assessors,* (39 *N. Y.* 81,) can be vindicated on any sound principle or not, I insist that in this case the plain and unambiguous rule prescribed by the statute, and adopted by the comptroller, should be applied to it, and thereby a palpable injustice in the shape of a

more than double assessment and taxation of the relator avoided.

II. The assesors erred in refusing to reduce the assessment on real estate. The uncontradicted evidence before them on the hearing showed that the real estate did not exceed $45,000 in value. The assessors act in a judicial capacity in hearing parties aggrieved, and must be governed by the evidence presented to them on such hearing. (*The People* v. *Reddy,* 43 *Barb.* 539, 544. *The People* v. *Ferguson,* 38 *N. Y.* 89.) In *The People* v. *Reddy,* above cited, Smith, J., said: " But the assessors must act upon the evidence before them, like all other officers acting in a judicial capacity, and fix the valuation at a just sum, such as will be warranted by the evidence. In this case I think it is very clear that there was nothing in the evidence before the assessors to warrant them in retaining the assessment of the personal property of the relator at $25,000."

In *The People* v. *Ferguson,* (38 *N. Y.* 89,) Hunt, Ch. J., said: "I think it was an error in the assessors to refuse to make these deductions. There was no practical difficulty in reaching a result by the aid of authentic tables and by such evidence as long established insurance companies can readily furnish. It was the duty of the assessors to act upon the evidence before them, and to adjudge how much the value of the stock was reduced by these contingent liabilities, and to deduct from the assessment accordingly. The evidence as presented, showed that the reduction would more than equal the surplus as found by the assessors, and there was nothing in contradiction or disparagement of this evidence. Their action is judicial, and to be governed by the evidence before them. All the evidence before them in the present case, showed that there was a contingent liability sufficient to absorb all their surplus, and I see nothing to cast doubt or suspicion upon it. The assessors should have decided in accordance with the evi-

The People *v.* Howland.

dence;" and he cites the cases of *The People* v. *Reddy*, *above cited,* and *Oswego Starch Co.* v. *Dolloway*, (21 *N. Y.* 460,) to sustain the position.    It is insisted therefore that the assessors in this case were acting in a judicial capacity, and should have reduced the real estate assessment to the sum of $45,000, at least, that being the effect of the uncontradicted evidence presented to them.

. III. The assessors committed a grave error in using and assuming to act, and in acting, upon the *ex parte* affidavits, previously used on the motion before Judge BOCKES, and this, too, in the absence and without notice to, or the knowledge of the relator.    The assessors, as before shown, are judicial officers, and as such are to be governed by the evidence presented to them.    They are not parties to the proceeding, adverse to the relator, whose duty it is to look up evidence, and produce it before themselves to act upon.    Being judicial officers simply, they are to be governed by the same rules on the hearing of aggrieved parties, that apply to other judicial bodies, and especially by those elementary and fundamental rules that apply to trials before all other judicial bodies; and one of which is, that the parties, whose rights are to be affected by the decision, must have notice of every hearing, and of all the evidence taken, or which is, or is to be, used against them.    (*Peters* v. *Newkirk,* 6 *Cowen,* 103.    *Yale* v. *Gwinits,* 4 *How.* 253.)    That the assessors are not liable to any party aggrieved by any erroneous decision they may make in the performance of their duties; and that this immunity from responsibility flows from the principle that their duties are judicial, in their nature, is well established; and such protection, too, is extended to them, when their acts are not only erroneous, but also when performed by them with malicious intent to injure the party aggrieved. (*Weaver* v. *Devendorf,* 3 *Denio,* 117.    *Barhyte* v. *Shepherd,* 35 *N. Y.* 238.)    And such protection extends not only to the assessors themselves, but also to all persons who are or may be

in any way engaged in enforcing the collection of, or in the receipt of, the money for the tax. (*Swift* v. *Poughkeepsie*, 37 *N. Y.* 511.)

It is important, therefore, that the same principle should be applied to the hearing before the assessors, of aggrieved parties, that applies to other judicial bodies, namely, that the evidence upon which they are to act, and which is to form the basis of their decision and judgment, must be publicly presented on the hearing before them, in the presence of the party aggrieved, and the same should be brought to his attention. Otherwise he is liable to be entrapped. For how can he know whether he has produced sufficient evidence to overcome the adverse testimony, if the assessors, after he produces his evidence and leaves their presence, are authorized to go on with the hearing, by hunting up or borrowing from the files of the county clerk's office, *ex parte* affidavits, contradicting the evidence which he has adduced? Surely, if such a practice would render the award of an arbitrator, or the report of a referee, void or erroneous, it should also vitiate the act of the assessors in making an assessment; and hence the assessment against the relator for real estate is erroneous, and should be set aside, with costs to the relator.

*C. A. Waldron*, for the defendants.

I. It is the duty of the assessors of the village of Mechanicville to prepare and complete an assessment roll of all property subject to taxation in said village, in the manner prescribed by law, in respect to town assessors, as nearly as practicable, and in connection therewith, they have the same powers in relation thereto as town assessors. (*Laws of* 1871, *chap.* 813, § 15.) It is required of town assessors, in making assessments, (except where a different rule is made by statute,) to estimate and assess all real and personal estate, liable to taxation, at its full and true value, as they would appraise the same in payment of a just

debt due from a solvent debtor. (1 *R. S.* 393, § 17. *Id.* 911, § 15, *5th ed.*) All real estate, (unless expressly exempted,) whether owned by corporations or individuals, is liable to taxation. (1 *R. S.* 387, § 1.) And the real estate of incorporated companies is to be assessed in the same manner as the real estate of individuals. (1 *R. S.* 389, § 6.). The method of assessing the property of incorporated companies, is contained in *Laws of* 1853, (*chap.* 654;) *Laws of* 1857, (*chap.* 456;) and the assessment made by the defendants against the relator, is in strict conformity thereto, and to the decisions of the courts. (*The People* v. *Board of Assessors of Brooklyn,* 39 *N. Y.* 81.) The case in 39 *N. Y.* 81, holds and decides that "as against corporations, the rule of taxation is just, when based upon the amount of capital paid in or secured to be paid in, after deducting therefrom the amount of such capital actually paid out for real estate, assessing the remaining capital at its actual value, and leaving the real estate to be assessed like other real estate of individuals, in the town or ward where situated, at its full and actual value, whether more or less than the price paid for it." (*Oswego Starch Factory* v. *Dolloway,* 21 *N. Y.* 449. 1 *Barb. Ch.* 432.)

II. The assessment cannot be reviewed for error in judgment of the assessors, if they have been regular in their proceedings, and have kept within the boundaries prescribed by the statute, or well settled principles of law. (*Albany and West Stockbridge R. R. Co.* v. *Town of Canaan,* 16 *Barb.* 244.)

III. Assessors are not bound to reduce the value of the property of any party deeming himself aggrieved by their assessment, to the amount fixed in his sworn statement and examination before them, but are to fix the value, after such statement, as they may deem just, having in view the general duty to assess property at its full value, as they would appraise the same in payment of a just debt due from a solvent debtor. The only effect of such a state-

ment is to set in motion again the judgment of the assessors, in order to reach a "just value" under the statutory rule. (*The People* v. *Fredericks*, 48 *Barb.* 173. 36 *How. Pr.* 487, 502, 503, *note on page* 505.) The assessors are to hear the evidence offered before them, for a reduction or change of assessment, judge of its credibility, weigh its effect, compare it with the law and decide the question presented. (*Barhyte* v. *Shepherd*, 35 *N. Y.* 238, 251.) The assesorss had other evidence before them than that furnished by the treasurer and agent of the company, and passed upon it, and did not credit the treasurer and agent. In the case of *The People* v. *Reddy*, (43 *Barb.* 539,) the party testified that he had not the amount of personal property for which he was assessed. In this case there is no such testimony, the treasurer and managing agent says, "that the stock of relator is not worth par in market, and is worth not to exceed 80 per cent of its nominal amount; that the stock has been sold in market, recently, at 80 cents on the dollar at a fair sale, and its market value does not exceed that price." It nowhere appears in what market said stock was sold, nor when, nor what amount, nor by whom, nor any of the circumstances attending the sale, and the assessors from their knowledge of the affairs of the relator, and from the fact of its having made a dividend of 10 per cent upon its stock, January 1, 1871, and from having of late been frequently informed by the treasurer and agent, and other stockholders of the relator, that said stock was worth at least par, did not credit the statement as sworn to by said treasurer and agent, and assessed its stock at par, after deducting the amount actually paid out for real estate.

IV. Where a writ of certiorari affects a considerable number of persons it never should be allowed. (2 *Law Jour.*, 437. *Susquehanna Bank* v. *Supervisors of Broome*, 25 *N. Y.* 315. 2 *Hill*, 28.) Because, if there be a want of jurisdiction or legal excess of power whereby any per-

son's rights may be injuriously affected, an action lies. (2 *Hill*, 28.)

V. The writ in this matter being to a municipal corporation, should not have been allowed, except upon notice. (*People* v. *City of Rochester*, 21 *Barb.* 656, and cases cited. *Id.* 664, 665.)

MILLER, P. J.   The assessment made by the assessors was in form, I think, in accordance with the decision of the Court of Appeals, in the case of *The People* v. *Board of Assessors of Brooklyn*, (39 *N. Y.* 81.)   That case holds that, as against corporations, the rule of taxation is correct when based upon the amount of capital paid in or secured to be paid in, after deducting the amount of such capital actually paid out for real estate, assessing the remaining capital at its actual value, and leaving the real estate to be assessed the same as other real estate of individuals in the town or ward where situated, at its actual value, whether more or less than the price paid.   There is no injustice in such a course, as it would enable the assessors to add to the value of the real estate such an amount as was authorized by the facts.   If the real estate has increased in value beyond its first cost, there is no good reason why the increase should not be added.   Such an addition does not make a double taxation, but merely compels the corporation assessed to pay taxes for the full value of its property at the time.   It does not prevent the application of the rule established in 39 *N. Y.* 81, because, in that case the corporation owned a large amount of real estate located outside of the territorial limits of the assessors, and beyond their jurisdiction; and there is no such distinction between the two cases as would authorize a disregard of the doctrine laid down in the case cited.

It is insisted that the assessors erred in refusing to strike out the assessment for personal property, and to reduce the assessment of the real estate, which the evidence before

them, upon the hearing, showed did not exceed $45,000 in value.

According to the provisions of the statute, (*Sess. Laws of* 1851, *ch.* 176, § 6,) as amended by *Session Laws of* 1857, (*ch.* 536, § 6,) whenever any person shall apply to the assessors to reduce the value of his real and and personal estate as set down in the assessment roll, it is made the duty of the assessors to examine such person under oath, &c., and after such examination, "they shall fix the value thereof at such sum as they shall deem just."

This statute has been the subject of judicial interpretation in the courts of this State. In *The People* v. *Reddy*, (43 *Barb.* 544,) the applicant, before the assessors, testified that he had not the personal property for which he was assessed ; and the court held that the assessors were bound to take his statement on that subject. In reference to the statute, the court say : " This provision does not give the assessors any right to fix such value arbitrarily or capriciously. They act judicially in fixing such value, and are called upon to pass upon the evidence adduced before them, and when they have no ground, in such evidence, to fix a valuation different from that sworn to by the person applying for such reduction, they are bound, I think, to follow his statement under oath, as much as the assessors were formerly required to fix such value at the sum specified in the affidavit required in such cases," &c. It is also said, after stating that the object of the amendment was to allow the assessors to make an oral examination of the applicant, as the assessors may think proper : " But the assessors must act upon *the evidence* before them, like all other officers acting in a judicial capacity, and fix the valuation at just such a sum as will be warranted by *the evidence*."

In *The People* v. *Ferguson*, (38 *N. Y.* 92,) Hunt, Ch. J., in discussing the subject of the duties of assessors in making corrections, says : " It was the duty of the assess-

ors to act upon the evidence before them, and to adjudge how much the actual value of the stock was reduced by those contingent liabilities, and to deduct from the assessment accordingly. The *evidence* as presented, showed that the reduction would more than equal the surplus, as found by the assessors, and there was nothing in contradiction or disparagement of the evidence. Their action is judicial, and to be governed by the evidence before them." As the assessors act judicially, they have the power to administer oaths and to hear testimony, and it is their duty to weigh the effect of the evidence; to judge as to its credibility; compare it with the law, and decide the question which is to be determined. (*Barhyte* v. *Shepherd*, 35 *N. Y.* 251.) Nor are the assessors concluded by the statement, alone, of the applicant; they may, in the exercise of their general powers, make further inquiries. (*People* v. *Fredericks*, 48 *Barb.* 173. *People* v. *Halsey*, 36 *How.* 487, 502, 503.)

From the authorities cited, it may be considered as an established principle, that when the evidence is uncontradicted, and the facts clear beyond dispute, the assessors are bound to act in accordance with, and must be governed by the evidence presented to them; and when there is a positive affidavit of the applicant, and direct proof, there should be considerable hesitation in disregarding such evidence.

If the person willfully swear falsely, on such examination before the assessors, he is deemed guilty of willful and corrupt perjury, under the provision of the section before cited.

In assessing the value of the stock at par, the assessors based their determination upon the ground, that from information received from other parties, as well as the affidavits before them, they did not believe the statement of the treasurer of the company. So far as relates to the information received from others, I am inclined to think

that it was a proper subject for consideration, and might be regarded as a part of the subject matter to be considered, and therefore, upon this ground, the action of the assessors, in assessing the personal property, can be sustained.

A question is raised by the relator's counsel, as to the right of the assessors to act upon the *ex parte* affidavits, and it is insisted that they committed an error in assuming to do so, and in using them in the absence of, and without the knowledge of the relators. As it does not appear, from the return, that the assessors did not believe the sworn statements made in the affidavits of the applicant, as to the value of the real estate, the assessment of the same, at the value fixed, must depend entirely upon all the affidavits which actually were used and taken into consideration in arriving at a conclusion as to the amount for which the real estate should be and actually was assessed.

The return states, that the assessors had before them, and in their possession, at the time of the hearing and at the time they passed upon the application, these *ex parte* affidavits, but the attention of the relators was not called to the fact that they were then present for use, or that they were or would be used upon the hearing. The affidavits referred to had previously been used upon a special motion in the Supreme Court, between the same parties, and although they may have been in possession of the assessors at the time, it nowhere appears, in the return, for what purpose they held them, or that they actually were used by the assessors at all; or that the facts stated in them were considered in any way, in making up their final determination, and in disposing of the application. It does not distinctly appear from the return, that the assessors held or regarded these affidavits as a portion of the evidence, in deciding the case. There are no distinct rules of practice especially established for the hearing of applications of this character, but it is quite obvious that it would have been but fair, and eminently proper, that

The People *v.* Howland.

the applicant should have been advised that these affidavits were a portion of the evidence, and would be considered, if such was the intention of the assessors. They were acting as judicial officers, and the party claiming to be aggrieved had a right to know, at least what written evidence was then before them, and to be used against the applicant.

Whether there was legal error in having these affidavits in the assessors' possession, without the knowledge of, or a notice to, the applicant, is not important, for they were not used, if the return is to control. And without passing upon the question whether the assessors could lawfully regard affidavits which were not openly known to the applicant, I am of the opinion, that, in the absence of anything in the return showing that these *ex parte* affidavits were actually used as evidence, and taken into consideration by the assessors, they cannot now be regarded as a part of the proceedings; that the affidavits provided by the relator, were the only evidence before them on the subject of value of the real estate, and as they are uncontradicted, the value must stand as there fixed. There was no other evidence besides the affidavits, and, under the decisions, they must be considered controlling and conclusive.

I think that this was a proper case for a certiorari, and that the proceedings are properly presented to the consideration of this court.

As the highest valuation fixed for the real estate by the uncontradicted evidence, is $45,000, the assessors should be directed to correct the assessment by striking out $125,000 assessed for real estate, and inserting $45,000 in the place thereof.

DANIELS, J., concurred.

PARKER, J. I think the defendants were right in deducting the *cost* of the real estate from the capital, and taxing the relator upon the balance of the capital stock, at

its actual value, as personal property. The case of *The People* v. *Board of Assessors of Brooklyn,* (39 *N. Y.* 81,) gives a construction to this effect, which settles the question. As to the valuation put upon the remaining stock, after deducting the cost of the real estate, I think the defendants were justifiable, from the circumstances stated by them in their return, in estimating it at par. And so, notwithstanding the cases of *The People* v. *Reddy,* (43 *Barb.* 539,) and *The People* v. *Ferguson,* (38 *N. Y.* 89,) I think the defendants were justified in refusing to govern themselves by the *opinion* of the witness Viall, as to the *value* of the real estate; and that they had the right to act upon their own judgment, on the question of *valuation.* This is more a matter of judgment and opinion, which the law imposes upon them, independent of testimony, than of fact, to be derived by them, from others. In the cases above mentioned, the facts proved were such as the assessors could not be presumed to be cognizant of; and, in such cases, they are not allowed arbitrarily to disregard the evidence. But when the subject of which they are to judge is one of which they are equally cognizant with the witness, and which the statute subjects to their judgment without the necessity of evidence, I do not think it is the intent of the statute, that they are to conform their opinions wholly to those of witnesses who may be called on to give opinions.

But here, it is evident that the defendants have relied upon the affidavits, which had been used in another proceeding, and which the defendants used again in this proceeding, without the knowledge of the relator that they were to be brought into it. This, upon the plainest principles of justice, and of the course proper in legal proceedings, they had no right to do. We cannot say that the opinion of Viall was overborne by the unbiased judgment of the assessors. It may have been put aside by the testimony thus improperly brought into the case.

I therefore concur in the conclusion of my brother,

MILLER, that the assessment should be corrected, by striking out the sum of $125,000, as the valuation of the real estate, and inserting the sum of $45,000 in its place.

[THIRD DEPARTMENT, GENERAL TERM, at Albany, January 2, 1872. *Miller*, P. J., and *Parker* and *Daniels*, Justices.]