THE PEOPLE OF THE STATE OF NEW YORK EX REL. PETER A. PORTER AND OTHERS v. HENRY S. TOMPKINS AND OTHERS, ASSESSORS OF THE TOWN OF NIAGARA, AND THE BOARD OF SUPERVISORS OF NIAGARA COUNTY, RESPONDENTS.

*Writ of* certiorari *to review an erroneous assessment—it must issue before the roll has been delivered to the board of supervisors.*

A writ of *certiorari* was issued on December 5, 1885, to the assessors of the town of Niagara and the board of supervisors of that county, to review an assessment made against the relators on certain lands known as the Goat Island property. The relators claimed that at the time when the assessment must be deemed to have been made, viz., on July 1, 1885, the title to the lands in question had passed from the relators and vested in the State, under the proceedings instituted under chapter 336 of 1883, and chapter 182 of 1885.

*Held,* that even if this were the fact, yet, as at the time of the issuing of the writ the roll had passed from the possession and control of the assessors, the writ should be quashed.

That the fact that the writ ran to the board of supervisors, in whose possession the roll was, as well as to the assessors, did not change the result.

*People ex rel. Raplee* v. *Reddy* (43 Barb., 539) and *People ex rel. Bay State S. and L. Company* v. *McLean* (5 Abb. N. C., 137) distinguished and not approved.

PROCEEDING by *certiorari* to review an assessment made by the assessors of the town of Niagara against the relators on lands known as the Goat Island property.

*Sprague, Morey & Sprague,* for the relators.

*David Millar,* for the respondents.

BRADLEY, J.:

The assessors of the town of Niagara assessed the property in question to the relators at the sum of $225,000. The main ground upon which the alleged claim for relief is founded is, that at the time the assessment was made, the title to the property was not in the relators, but had passed from them to the State of New York by appropriation of it pursuant to chapter 336 of Laws of 1883, entitled " An act to authorize the selection, location and appropriation of certain lands in the village of Niagara Falls for a State reservation, and to preserve the scenery of the Falls of Niagara," and chapter

182 of Laws of 1885, entitled "An act to provide for the payment of the awards made for the lands selected and located by the commissioners of the State reservation at Niagara," and pursuant to the proceedings taken under the first mentioned act, which provides for the appraisal of compensation to owners of certain lands, including those in question, by commissioners, and for application to the court for the confirmation of their report, the purpose of which was to acquire the title to them for the objects mentioned in the title of the act. The appraisal and report were duly made, and, in October, 1884, were confirmed by the order of the court.

It was also provided by the first act that unless the legislature, within two years after its passage, made an appropriation to pay the owners of the lands the compensation awarded, the proceedings taken under it should be void. Within that time, and on the 30th day of April, 1885, the secondly above mentioned act was passed making the requisite appropriation for such purpose, which continued the operation of the previous act and gave effect to the proceedings taken under it to acquire the lands in question.

The right of the assessors to assess this land to the relators depended upon the ownership of it by them on the day the assessment is deemed by statute to have been made. That day was the 1st day of July, 1885. (1 R. S., 390, § 8 ; *Mygatt* v. *Washburn*, 15 N. Y., 316 ; *Clark* v. *Norton*, 49 id., 243 ; *Overing* v. *Foote*, 65 id., 263.) Prior to that time the right of the State to take land and that of the relators to obtain the awarded compensation had become fixed. This was accomplished by the confirmation of the report and appraisal and the appropriation to pay it. (*Matter of R. and C. R. R. Co.*, 67 N. Y., 242 ; affirming, 8 Hun, 34.) It is contended, on the part of the relators, that this situation operated to vest the title in the State, and there is some force in this contention. The statute does not, in express terms, declare when title shall pass, but it does provide that the proceedings are taken for the purpose of acquiring title to the lands (Laws 1883, chap. 336, § 3) ; and "that the State shall not take possession of the said appraised premises until the amount awarded for the same shall have been duly appropriated by act of the legislature of this State for this purpose." (Id., § 9.)

There is no expressed qualification of the right derived from such confirmation and appropriation in respect to the title, and the ques-

tion is one of their legal effect in view of the purpose for which they were taken. The fundamental principle and rule that private property shall not be taken for puplic use without just compensation (Const., art, 1, § 6), requires that the payment of the compensation be made certain before the title or possession of the owner can be divested. Hence, payment by a private individual, seeking to take property for a public purpose, is a prerequisite to the right because the credit of such person or corporation would not give certainty, in the legal sense, that the compensation would be made or could be obtained, but such rule does not apply to a municipal corporation or the State, when an appropriation has been made and the right afforded to the property owner to proceed to obtain the sum awarded. Then there is an adequate fund provided and the means of obtaining payment rendered certain. (*Bloodgood* v. *M. and H. R. R. Co.*, 18 Wend., 9, 18; *Rexford* v. *Knight*, 11 N. Y., 308, 314; *Rider* v. *Stryker*, 63 id., 136; *Chapman* v. *Gates*, 54 id., 145; *Ballou* v. *Ballou*, 78, id., 325.)

In the case last cited, the statute provided that the title should vest in the State when the appraisement should be made and recorded (1 R. S., 226, § 52), but when the statutory declared purpose is to acquire the title, and the proceedings and means provided by the statute are requisite to accomplish it, and they have been fully observed and completed, it would seem to be sufficient to effectuate such purpose without the aid of an express declaration of the statute of such result. That was the situation in respect to the premises in question on the 1st day of July, 1885. The requisite completed proceedings had been taken and the funds provided for the payment of the compensation, and the relators had adequate and certain remedy to obtain them.

This is all that was required to enable the State to take title for the public purpose in view, unless the statute may be so construed as to make the vesting of it with title dependent upon something further, or as to delay such result until some later event or time. It is suggested that the provision of the statute that "upon deposit or tender of said awards respectively, the commissioners may enter upon said lands and take possession thereof on behalf of the State of New York" (Laws of 1885, chap. 182, § 1), had the effect to make the vesting of title depend upon payment or tender of the sum awarded.

There is some apparent force in this view, but it is difficult to see that this provision of the statute had the effect to modify the relation of the parties to the land, in respect to the title given by the prior act, and the proceedings under it supported and effectuated by the appropriations of the requisite funds, although it may have had the effect to delay the act of taking possession.

Their rights of property would seem to have become fixed when such appropriation was made in April, 1885. Then subsequently, and in May, 1885, another act was passed in respect to the occupation and management of the property by the State (Laws of 1885, chap. 286), which accomplished so far as required by legislation the purpose and plan in view and initiated by the first mentioned act. But in any view that may be taken of this question of title, we are unable to see how any relief can be afforded to the relators in this proceeding. The writ of *certiorari* was issued in December, 1885, directed to the assessors and board of supervisors. At that time the assessment-roll had passed from the possession and control of the assessors, and any attempt to require them to correct the roll would necessarily be ineffectual. They are by statute directed to deliver the assessment-roll to the supervisor of their town on or before the first day of September. (1 R. S., 394, § 27.) And by their return it appears that this was done by the assessors. The writ, therefore, as to them, is not supported. (*People ex rel. Marsh* v. *Delaney*, 49 N. Y., 655; *People ex rel. Law* v. *Commissioners, etc.*, 9 Hun, 609; *People ex rel. Raplee* v. *Reddy*, 43 Barb., 539; *People ex rel. L. S. and M. S. R. R. Co.* v. *Dunkirk*, 22 N. Y. W. Dig., 240; *People ex rel. Heiser* v. *Assessors*, 16 Hun, 407.)

But it is contended that as the writ was issued to the board of supervisors while the roll was with them, it brings it up and the court may declare the assessment illegal and order it stricken out. The office of the writ of *certiorari* is to review and correct errors committed by tribunals or officers when exercising judicial or *quasi* judicial powers. (*People* v. *Mayor*, 2 Hill, 9; *People ex rel. Oneida Valley Nat. Bank* v. *Supervisors*, 51 N. Y., 442; *People ex rel. S. and U. H. R. R. Co.* v. *Betts*, 55 id., 600.) When it involves the inquiry whether the action and determination were legal and should be set aside or confirmed, it may be seen that the writ may be effectual

after the powers of the tribunal or officers have ceased as to the matter in question, because it is mere matter of review, but when the purpose of the proceeding is to have the direction of the court for those to whom the writ is issued, to do some act by way of correction of an error, it must, we think, be within the power of such officer or tribunal to perform the act. The writ was sent out to review the action of the assessors. They acted judicially in respect to the question of the assessment of the property, and had the power to strike out any assessment which its correction required. But the board of supervisors, after the roll went to it, could exercise only such powers as were conferred upon them by statute.

While they had some judicial duties to perform, they did not embrace the power of striking out an assessment. Amongst them is the power to equalize, by increasing or diminishing the aggregate valuations of real estate in any town, by adding or deducting a percentage of the valuations, so as to produce a just relation between all the valuations of such estates in the county, " but they shall in no instance reduce the aggregate valuations of all the towns below the aggregate valuation thereof as made by the assessors." (1 R. S., 395, § 31 ; *Bellinger* v. *Gray*, 51 N. Y., 610.)

Our attention is called to no case in which the question arose supporting the contention that the writ in such case may effectually issue and go to the board of supervisors after the roll has come to them, or that review can be had and such relief given when the writ has been issued after the roll had legitimately passed from the assessors to the board of supervisors. In *People* v. *Reddy (supra)*, the justice delivering the opinion remarked that " when it appeared upon this return that the roll had been delivered to the supervisors, we could have directed a writ of *certiorari* to him or to the board of supervisors, if the roll had been delivered to such board, to bring the same before us. The writ would reach the record and bring it up wherever it might be, until it had passed beyond our power to review the assessment, by delivery to the collector, with the warrant of the board of supervisors annexed." The question did not there arise, and this suggestion was *obiter*.

In *People ex rel. Bay State S. and L. Company* v. *McLean* (5 Abb. N. C., 137) the return made by the assessors to the writ was

that the roll had been delivered to the supervisor, and a supplemental writ was issued to the supervisor directing him to produce the record before the court, which was done, and the court held that there was " no difficulty about striking the assessment from the roll, as that has been brought into this court by the supervisor, in whose hands it now is." This was affirmed at General Term (17 Hun, 204) and by Court of Appeals (80 N. Y., 254) ; but in the latter court the question was not considered further than to say that the appellants were concluded " from now raising the objection that *certiorari* was not a proper remedy, * * * assuming that, if seasonably taken, the objection should have prevailed." (And see *People* v. *Supervisors*, 31 How., 237.) It is difficult to see how, by the writ issued to the board of supervisors, can be effectually reviewed the action of the assessors for the purpose in view.

We are inclined to think that the relators have mistaken their remedy, that the proceeding by *certiorari* cannot be supported, and that the writ must be quashed.

Barker and Haight, JJ., concurred; Smith, P. J., concurred in result.

Writ of *certiorari* quashed, without costs.