Bradley, J.
There is no question about the regularity of the proceedings of the assessors up to the time they met on the third Tuesday of August to review their assessments. The complaint is that the assessors then, upon the proceedings had in behalf of the relators, erred in not removing or reducing the assessments of their personal estate.
The question presented, therefore, is whether the assessors were fairly required to do so by the proofs as presented to them.
*547 It was the duty of the assessors, on the application of any person aggrieved, to hear and examine his complaints on the subject. They did hear the complaints of the relators, but in the view they had of their duty concluded that the relators failed to furnish the requisite proof to require or justify the reduction sought of the assessments of their personal property. The return of the assessors to the writs of certiorari, or to the facts legitimately presented by them, must, for the purposes of the question here, be deemed conclusive.
In the case of the relator William L. Mercer the facts as so stated are that he did not personally appear before the assessors; that Andrew G-. Mercer appeared there and presented in his own behalf an affidavit, made by him before a notary public, and was by them informed that they could not accept it for the reason, as they understood the law, that the person should be sworn and examined by them; that afterwards, and just before departing from the office occupied by the assessors, he laid upon the desk an affidavit of William L. Mercer, which had- been taken before a commissioner of deeds, and said : “ Here is an affidavit that I will leave for my brother William,” and left the office. This affidavit was to the effect that his personal estate, including his bank stock after deducting his just debts and property invested in the stock of corporations or associations liable to be assessed therefor, and his investments in the obligations of the United States, did not exceed the sum of one dollar. Ho other proof in his behalf was presented to the assessors.
The relator, Andrew Cr. Mercer personally appeared before the assessors and presented to them his affidavit, taken before a notary public, and similar in all respects to that before mentioned of William L. Mercer. The assessors examined the affidavit and said to him that they could not accept it, and, on being asked why, replied that, as they understood the law, it was necessary, in order to remove the assessment upon personal property, that the person should be sworn and examined by them; they also stated to him that if he desired they would administer to him the oath, and if his examination was satisfactory they would remove the assessment. The oath was administered to him. He was asked : “ On what ground do you demand a reduction of your personal assessment ? A. On account of debts and money invested in stock corporations. Q. What is the nature of your indebtedness—of what does it consist ? A. I decline to answer.” After being told that if he could not answer the question there was no use ingoing any further with the examination, he said: “ Well, put it down twenty thousand. Q. To whom are you owing this money ? A. I decline to answer.” He answered no further questions, nor did he subscribe the examination, which was taken in writing, but, laying his affidavit before referred to on the desk, and saying “ that he would rest the case upon that affidavit,” left the office and did not again appear before the assessors.
The relator, Philip M. Kendig, also appeared before the assessor and presented his affidavit, similar to that before mentioned, takers, before a notary public, and after being informed that the assessors *548 could not accept it for the reasons before stated, he, after some hesitation, consented to be sworn. The oath was administered to him, and he was asked: “ On what grounds do you demand a re- ' duction of your personal assessment ? A. That I am in debt. Q. What is the nature of your indebtedness; of what does it Consist? A. Notes and other evidences of debt. Q. What is the amount of your indebtedness ? A. Eighteen to nineteen thousand dollars. Q. To whom are you owing this money ? A. I decline to answer.” lie did not answer that question nor did he subscribe the examination, which had been taken in writing, but laying down his affidavit, before referred to, and saying “ that he would rest his case upon that affidavit," left the office and did not again appear before the assessors.
The application of Mr. Kendig was made about half an hour after that of Andrew Mercer. The assessors indorsed upon each of their affidavits the words “ Not accepted by the assessors as sufficient evidence to warrant a reduction,” and filed it in the office of the town clerk, and immediately thereafter mailed to each of the relators a written notice that his affidavit had been so indorsed as not accepted; that it had been so filed, and that his personal assessment had riot been reduced.
Those are the facts upon which the determination here must mainly be founded, and as the powers of the assessors are statutory, the question is whether or not the relators took such action in support of their applications as required the assessors to give them the relief they sought, or any relief by way of reduction of their assessments. By the act of 1851 (Chap. 176, § 6), as amended by Laws of 1857 (Chap. 536, § 5), it is provided that “ whenever any person on his own behalf, or on behalf of those whom he may represent, shall apply to the assessors of any town or ward to reduce the value of his real and personal estate, as set down in the assessment roll, it shall be the duty of such assessors to examine such person under oath touching the value of his or their said real or personal estate; and after such examination and such other supplementary evidence under oath as shall be presented by the party or person aggrieved, they shall fix the value thereof at such sum as they may deem just, ” etc., “ but if such person shall refuse to answer any question as to the valúe of his real or personal estate, or the amount thereof, or to present sufficient supplementary evidence under oath to justify a reduction, the said assessors shall not reduce the value of such real or personal estate. The examination so taken shall be written and shall be subscribed by the person examined.”
In the case of William L. Mercer there was an entire failure to comply with the statute, and the person presenting and leaving his affidavit with the assessors was advised by them that they would not accept an affidavit for the reasons stated by them.
It is said, on the part of the relator, that his affidavit follows the form of that in People v. Weaver, 100 U. S. 539. True, it does, but it may be observed that the affidavit there was made pursuant to a statute relating to the city of Albany (Laws 1850, chap. 86, § 9), which may have remained effectual notwithstanding the sub *549 sequent general statutes amending the Revised Statutes .on the subject. Laws 1851, chap. 176, § 4. In that case the sole question raised was one of the constitutionality of a statute of this state. People ex rel. Caggar v. Dolan, 36 N. Y. 59. There is no 'support for the writ issued in behalf of the relator William L. Mercer.
The disposition of the other two cases is dependent upon a state of facts applicable to both of them. Their affidavits were not effectual to support their claim for reduction of their assessments, and would not have been under the Revised Statutes before the amendment of 1851, as there the affidavits for such purpose must have been made before the assessors or one of them. 1 R. S. 894, § 25. Such provision was repealed by Laws of 1851, chap. 176, § 3, The assessors proceeded to examine those relators upon oath, and the examination of them was respectively interrupted and stopped by their refusal to answer the questions as to whom they owed the indebtedness referred to in their previous answers. It is urged that the assessors in making that inquiry were assuming to exercise an arbitrary and inquisitorial power not within reasonable limits and illegally, and that the relators properly declined to answer it.
The purpose of the statute of 1851, as amended in 1857, evidently was to provide for greater and more satisfactory means of information than that which was necessarily furnished by the affidavit provided for by the former statute. This might not be accomplished if the view of its purpose and effect urged on the part of the relators were adopted.
In the cited case of People v. Reddy, 43 Barb. 539, the question here did not necessarily arise. The court there said that the object of the amendment was to allow the assessors to subject the person appealing from his assessment to such an oral examination as they might think proper. Nor is the contention on the part of the relators as applied to the present case supported by People v. Howland, 61 Barb. 273 ; People v. Ferguson, 38 N. Y. 89, or People v. Ryan, 88 id. 143. There the courts held, as in People v. Reddy, that the assessors act judicially and must be governed by the evidence before them, and cannot arbitrarily determine the facts to the contrary. But it must be assumed that the facts appearing by the evidence to control their action must be such as appear from the examination which the assessors are at liberty to make of the person seeking relief against his assessment. Nothing to the contrary was held in People ex rel. Douglass v. Dykes, 19 N. Y. Supp. 78; 45 St. Rep. 621. And in the later case of People ex rel. Corwin v. Assessors of Middletown, 64 Hun, 167; 46 St. Rep. 148; 19 N. Y. Supp. 142, in the same court, it was held that the assessors had no power to reduce the assessment upon the case made solely by the affidavit of the attorney who appeared for the person assessed. 1
It is seen by reference to the statute before mentioned that if the person assessed refuses to answer any questions as to the value of his property or the amount thereof, the assessors shall not reduce the assessment. In Vose v. Willard, 47 Barb. 320, it was held that the assessors properly refused to reduce the *550 assessment of the person making application therefor because, on examination by them in respect to the amount of his debts and to whom he was indebted, he stated he could not remember whom he owed, as well as for the reason that he did not subscribe his written examination. And there Mr. Justice Johnson said: “If he claims to be indebted to a large amount or to any amount and is unable to tell what persons he is owing, who his creditors are, and to what amount he is indebted to each, or near the amount, it would be quite safe for the assessors to( assume and to act upon the assumption that the claim was a mere pretense to avoid the payment of his just and proper share of the public burdens.” In the present case, the assessors in pursuing the inquiry which they made, and to which the relators refused to respond, were exercising their power within the purpose of the statute providing for the examination by them. A more limited construction of the power conferred by it would seem to make it appear that the amendment of the Revised Statutes upon -the subject was made without any substantial purpose. It was essential to their right to have their assessments removed or reduced that the relators submit to an examination under oath as to the assessable value of their personal property. This they did not do, but refused. And if it had been done it would likewise have been necessary for the relators to subscribe the written examination. The requirement on their part was not accomplished. It must be assumed that the assessors, according to the best information in their power, ascertained and inserted in the assessment roll the value of the relator’s taxable property and that of the other taxable inhabitants of the town. And for the reasons before given the relators failed to establish any right to have their assessments or that of either of them reduced.
The prayer of the petitioners should be denied and the writs dismissed, with costs.
Ordered accordingly.