(15 App. Div. 8.)

PEOPLE ex rel. NEW YORK & N. J. TELEPHONE CO. v. NEFF et al.

(Supreme Court, Appellate Division, Second Department. March 2, 1897.)

1. MUNICIPAL CORPORATIONS—BOARD OF ASSESSORS—INCREASE OF ASSESSMENT.
    The board of assessors of Brooklyn, in reviewing an assessment on an application to have it reduced, had no power to increase it beyond the amount fixed on June 1st, where the charter authorizing the board to levy (Laws 1888, c. 583, tit. 10, § 8), provided that they should complete their assessments by June 1st, and enter them in a book, and that the book should be kept open for examination and correction until July 1st, and that notice thereof should be given those taxed, who might apply. when aggrieved, to have their assessment corrected, and that the assessors should attend during such time, and "review and make corrections."
2. SAME—POWERS OF BOARD OF ASSESSORS—REVIEW OF ASSESSMENTS.
    The board of assessors of Brooklyn is not limited, in correcting tax assessments, to the time during which the charter (Laws 1888, c. 583, tit. 10, § 9) requires the books of assessment to be kept open for review and correction, but may make corrections within a reasonable time thereafter.
3. SAME—EFFECT OF UNAUTHORIZED INCREASE.
    An assessment is not invalidated by an unauthorized increase made by the board of assessors on an application to reduce it.
4. SAME—CAPITAL INVESTED IN PATENT RIGHTS.
    The capital invested by a corporation in United States patent rights is exempt from taxation.

**5. SAME—ACCRUING INTEREST—DEDUCTED FROM ASSETS.**

Where a corporation monthly charged up to its indebtedness one-twelfth of the accruing interest for one year on its outstanding mortgage debt, this item is a debt which must be deducted before the assessable return of the company can be ascertained.

**6. SAME—ESTIMATED TAXES ARE NOT DEBTS.**

A fractional amount of estimated annual taxes charged up by a corporation monthly on its liability account, and amounts charged for asserted depreciation in the value of assets, are not debts which must be deducted before the assessable return of the company can be ascertained, since they are mere estimates, and necessarily uncertain in amount.

**7. SAME—UNEARNED RENTALS NOT LIABILITIES.**

Unearned rentals of a solvent telephone company, consisting of advance payments for telephone services, refundable only in case the service is not rendered, are too speculative to be considered liabilities which should be deducted from the assets before assessing the property of a company.

**8. SAME—UNCLAIMED DIVIDENDS—DEDUCTED FOR ASSETS.**

Unclaimed dividends of a corporation are fixed liabilities, which should be deducted from its assets in order to determine the assessable return of the corporate property.

Appeal from special term, Kings county.

Certiorari, on the relation of the New York & New Jersey Telephone Company, to review the action of Barzillai G. Neff and others, constituting the board of assessors of the city of Brooklyn, in levying assessments on relator's property. Appeal by relator from a portion, and by defendants from the entire, judgment modifying and reducing the assessment. Modified.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, and BRADLEY, JJ.

Alexander Cameron, for relator.
Rollin A. Breckinridge, for defendants.

BRADLEY, J. This proceeding was instituted by certiorari to review the assessment of the personal property of the relator, and heard upon the petition, writ, and return at special term, as provided by statute. Laws 1896, c. 908, art. 11. The original assessment for the year 1896, as entered on the books of annual record of assessed valuations, was $641,420. The relator applied in June for its correction and reduction. No hearing was had upon such application until July 20th, when the treasurer of the relator was examined, and afterwards, on July 29th, the assessment was increased to $1,-019,327. The decision of the trial court was to the effect that as to the amount of the increase so made the assessment was illegal, and that the original assessment was erroneous, and that it be reduced to $424,164.32.

The illegality of that increased amount is dependent upon the want of power of the board of assessors to add it to the assessment as originally made. The charter of the city of Brooklyn provides that the assessors shall make and complete their assessed valuations of taxable property by the 1st day of June, and enter them in books called "Annual Record of Assessed Valuations"; that the books shall be kept open for examination and correction until the 1st day of July, when they shall be closed. "During the time said books shall be open, said assessors shall give notice thereof as required by law,

and during that time application may be made by any person aggrieved by the assessed valuation of his or her real or personal estate, to have the same corrected." Laws 1888, c. 583, tit. 10, § 8. After the completion of the assessment on June 1st, and notice given, the assessors had no power to make a change in any of them without the application of some person to have the assessment made of his property corrected. People v. Forrest, 96 N. Y. 544. As has been observed, such application may be made by a person aggrieved. It is by virtue of that provision of the statute that application was made by the relator. Thereupon it was the duty of the "assessors to attend during such examination and review and to make corrections." Laws 1888, c. 583, tit. 10, § 9. It is insisted on the part of the defendants that when the opportunity for review and correction of the assessment of the relator's property was given by its application, it was within their power to increase the amount of it. Whatever may be the literal import of the word "corrected" or "correction," it seems quite evident that it was not within the purpose of its use in the statute to enable the assessors to increase the assessment on such review. The application is made by the "person aggrieved." It is his grievance, not that of the municipality, represented by the assessors, upon which review and correction are sought and made. Anything beyond that is not deemed within the contemplation of the statute. There is no substantial difference in the construction and effect in that respect of the statute before referred to and the general statute as it existed prior to 1851, which provided for review of "assessments on the application of any person conceiving himself aggrieved." 1 Rev. St. p. 393, § 20.

Our attention is called to no case in which permission has been recognized to increase an assessment on such review under either statute. Both of them provided for review solely upon the complaint of the person aggrieved or conceiving himself so by the assessment. The statute makes the remedy his, and it is by him alone that relief is sought. It therefore seems that the application provided for has an apparent purpose consistent only with the review of the alleged grievance of the applicant. It may also be observed that, if the effect of an increase of an assessment on such a review should be to include additional property within it, the notice given under the statute would not be sufficient to render the inclusion of other property in the assessment legally effectual against the person entitled to notice and opportunity to be heard. Stuart v. Palmer, 74 N. Y. 183; Overing v. Foote, 65 N. Y. 263; Clark v. Norton, 49 N. Y. 243. In the present case it cannot be assumed that other property was added to make the increase, although it does not appear just how it was obtained.

It is urged by the counsel for the relator that, not only the increased amount, but the entire assessment, was illegal, because the increase was made after the 1st day of July, and that the original assessment was vitiated for the want of proceedings to validate it following the application for correction. It may be that a literal interpretation of the statute indicates that the corrections are to be made by the board during the time the books are to be kept open for

examination and correction, which is until the 1st day of July, when the statute directs that they shall be closed. Those provisions are entitled to a reasonable and practicable construction in view of their purpose. The statute contemplates that any application for correction shall have consideration, and, if it relate to personal property, that the applicant shall be examined upon oath, and that applications may be made at any time within which the books remain open. Laws 1888, c. 583, § 8. The applications may be numerous, and many may be made on the last day of June. The purpose of the statute cannot be accomplished if the power to consider applications is limited to the time expiring with June. The reasonable intendment of those provisions of the statute is that the books are closed to applications for correction on the 1st day of July, and that the examination and review founded upon applications before then made and undisposed of may follow that time.

While it is true that the original assessment of $641,420 was not, as such, represented by a completed roll open to inspection for 15 days, as provided by statute (Laws 1896, c. 908, § 38, which took the place of Laws 1880, c. 269, § 9, repealed), yet it may be assumed that a completed assessment roll for the larger amount was duly subject to inspection. This contained the original, with a further amount added. The invalidity of the latter did not infect such original assessment with illegality. And assuming, as we have thus far, that the additional sum in the roll was illegal, it could be stricken out as such. Laws 1896, c. 908, § 253; People v. Valentine, 3 App. Div. 520, 38 N. Y. Supp. 1087. We find nothing in the cases cited on the part of the defendants to the contrary of the views here expressed as to the power of the assessors to increase the amount of an assessment on such review by them. In Apgar v. Hayward, 110 N. Y. 225, 18 N. E. 85, the assessment of real estate of the corporation, for the correction of which application was made, was reduced, and the consequent increase of the assessed value of the stock of the corporation was held to have been within the judicial functions of the commissioners as the result of the peculiar provisions of the statute applicable to the city of New York.

We have thus far proceeded to consider the question of power of the defendants to increase assessments without reference to the provision of the more recent "tax law" to the effect that on review the assessors may increase or diminish an assessment. Laws 1896, c. 908, § 36. This act, which took effect June 15, 1896, is a general one, containing provisions applicable to cities. It leaves sections 8 and 9, before referred to, of the Brooklyn City Charter, unrepealed. They provide for review by the assessors. While the applicability of that provision of the tax law of 1896 to the assessment in question or to the city of Brooklyn is questionable, by reason of the provisions of the charter on the subject, the determination of that question is unnecessary for the purposes of the present case, since, in the view taken, the result is the same whether the increased assessment as a whole be deemed subject to review as erroneous or the added portion be treated as illegal. The question is whether the assessment was erroneous. The relator made and delivered to the

44 N.Y.S.—4

defendants, as a board of assessors, a statement, whereby it appeared that its capital stock actually paid or secured to be paid in was $3,423,400; its gross assets April 30, 1896, $6,293,784.56; and, after making deductions for capital paid for United States patent rights, $845,000, for debts, so called, $1,747,614.62, for value of real estate, $3,203,691.06, and for assessed value of Brooklyn telephone lines as real estate, $110,127,—making together $5,906,432.68, —leaving, as per statement, subject to assessment, $387,351.88. The assessors adopted the relator's statement of its gross assets. In the amount thus stated of them it may, upon the undenied statement of the petition of the relator, and the evidence of the treasurer inferentially to such effect, be assumed was included the amount invested in United States patent rights. This amount was exempt from taxation, and should have been deducted. Com. v. Westinghouse Electric & Manuf'g Co., 151 Pa. St. 265, 24 Atl. 1107, 1111. See opinion of Bartlett, J., in People v. Harkness, 44 N. Y. Supp. 51. Of the items constituting such statement of debts of the relator the defendants excluded and disallowed these for accrued interest on mortgages: $2,220.12; accrued taxes, $11,561.35; accrued subway taxes, $3,164.37; amount charged off for depreciation, $16,-438.81; unearned rentals, $185,212.69; unclaimed dividends, $5,264.-26,—making $223,862.60. It appears that monthly the relator charged up to its indebtedness one-twelfth of the accruing interest for one year upon its outstanding mortgage debts. This item in the statement represents the interest which had accrued on such debts during the first four months of the year. No reason appears why it may and should not be treated as a debt, although not then matured. A like fractional amount of estimated annual taxes, it seems, is entered monthly. This is a mere estimate, necessarily uncertain in amount, and was properly disallowed. The same may be said of the amount charged off for asserted depreciation in value of assets, because there is no proof in support of such depreciation in value. The unearned rentals consist of advance payments for telephone service, without, so far as appears, any option on the part of those making the payments to relinquish, and have the amount paid refunded; but it seems that the right to repayment is wholly dependent upon the default of the relator, and, as there is no reasonable ground to apprehend its failure, since it has a fair surplus, and pays 7 per cent. dividend on its stock, the advance moneys paid on rentals may properly be included in the assets of the relator. This differs essentially from unearned premiums of insurance companies. In their case there is a contingent liability beyond the control of the companies to be estimated in making assessment of their personal property. The liability of the relator to repay the money so advanced is too slight, speculative, and remote to require consideration. The unclaimed dividends are fixed sums, which the relator is required to pay. They have been declared, and the stockholders are entitled to them on call. The amount of the dividends was properly allowed by the trial court. The assessed valuations were made by the defendants upon the basis of 70 per cent. Proceeding upon that basis, these views lead to the conclusion that the

assessed valuation of the relator's personal property at the time in question was $422,610.23.

It is urged on the part of the relator that 10 per cent. of its capital should have been deducted, pursuant to the statute providing something to that effect. Laws 1857, c. 456, § 3. This was repealed by Laws 1896, c. 908, and its provisions substantially continued. Id. § 31. It may be that the relator would have been entitled to such deduction if the claim for it had been made on the application or proceeding for review. No such claim was then made, but, on the contrary, the statement submitted by the relator to the defendants recognized its liability to assessment for $387,351.68, which did not include any such deduction, and on the examination thereupon had of the representative of the relator he conceded that such should be the amount of the assessment. As the failure to deduct the 10 per cent. of the capital was not made the subject of grievance, objection, or complaint founded upon the application for review and correction, it is not necessarily or properly the subject for consideration in this proceeding; nor did the relator seek to bring it to the attention of the court by any allegation in the petition for the writ therein.

The judgment appealed from should be modified by reducing the assessment thereby adjudged to the sum of $422,610.23, and, as so modified, affirmed, without costs of this appeal to either party. All concur.