against the board of education, to which the Dannat Case relates, and from that employed by the police department, to which the Swift Case relates, and pointed out as one ground of difference that, while the claims were audited by the board of water commissioners, they were paid by the treasurer of the city, and no funds were turned over to the board of water commissioners for such purposes.

Moreover, it fully appears from an examination of the opinion that the principal ground upon which it was declared that the water commissioners were agents of the city in the Davidson Case was that they were authorized to acquire a water plant *for the village, the revenues from which were to be received by the village,* which, in my opinion, is the important distinction between that case and the case at bar. I am of opinion that the city has discharged its full obligation in the premises, and that the plaintiff must rely on his reserved right under the contract to take back the wagons, or upon a remedy by mandamus, or otherwise, against the fire commissioners.

It follows that the judgment and order should be reversed, and the verdict of the jury set aside, with costs to the appellant, and judgment entered in favor of the defendant, dismissing the complaint, with costs (see Bonnette v. Molloy, 138 N. Y. Supp. 67, App. Div. 1st Dept., decided November 8, 1912), upon the ground that as matter of law, under no view of the facts, is there any liability on the part of the city. All concur.

---

PEOPLE ex rel. BUTTERICK PUB. CO. v. PURDY et al.,
Commissioners of Taxes.

(Supreme Court, Appellate Division, First Department.   December 6, 1912.)

1. TAXATION (§ 381*)—CORPORATIONS—CAPITAL STOCK—DEBTS—DEDUCTION.
  Where relator, a publishing corporation, collected subscriptions for its periodicals in advance, the unearned portion of the subscription price for the current year at the date of an assessment of relator's capital stock for taxes did not constitute a debt, which relator was entitled to have deducted from its assets in determining the value of its capital stock for assessment, in the manner provided by Laws 1909, c. 62 (Consol. Laws 1909, c. 60) § 12.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 631; Dec. Dig. § 381.*]

2. TAXATION (§ 381*)—CORPORATIONS—CAPITAL STOCK—VALUATION—UNLIQUIDATED INDEBTEDNESS.
  Where relator published and sold paper dress patterns, under a contract providing that on the termination thereof relator would repurchase those unsold and pay therefor 75 per cent. of the price paid by the buyers, relator's liability to make refunds under such contracts, while continuing, was speculative and contingent; and hence it was not entitled to deduct any amount therefor as a liability in determining the value of its capital stock for assessment, as provided by Tax Law (Laws 1909, c. 62 [Consol. Laws 1909, c. 60]) § 12.
  [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 631; Dec. Dig. § 381.*]
  Ingraham, P. J., and Scott, J., dissenting in part.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Certiorari by the People, on the relation of the Butterick Publishing Company, against Lawson Purdy and others, as Commissioners of Taxes of the City of New York. From an order quashing the issue to review an assessment of relator's capital stock, it appeals. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

James B. Sheehan, of New York City, for appellant.
Curtis A. Peters, of New York City, for respondents.

McLAUGHLIN, J. The relator's capital stock was assessed, under section 12 of the Tax Law (chapter 62, Laws of 1909; Consol. Laws 1909, c. 60) on the second Monday in January, 1911, for purposes of taxation for that year, at $250,000. Within the time provided by statute the relator appeared before the commissioners of taxes and assessments and requested that the assessment be revised and corrected by deducting as debts owed by it two items, amounting in the aggregate to $900,321.29. One of the items consisted of the sum of $503,170.25, the amount of subscriptions paid in advance to the relator for certain magazines or periodicals which, at the time the assessment was made, had not been printed or published. The other was the sum of $397,151.04, which the relator alleged was a debt due to merchants or agents on account of the possible redemption of patterns which might thereafter be returned. The commissioners of taxes and assessments refused to make these deductions, and finally fixed the assessment against the relator's capital stock as originally made, viz., $250,000. Thereupon the relator applied for and obtained a writ of certiorari to review such action. Defendant then moved, upon the petition, order for the writ, and the writ itself, to quash the same and dismiss the proceeding. The motion was granted, and the relator appeals from the order.

[1] First. As to the amount of $503,170.25. The relator is engaged in printing and publishing periodicals and selling the same by subscription. These periodicals are published at stated periods, and it accepts payment for the same for the term of one year in advance. The advance payments for subscriptions which have not been entirely fulfilled by the relator make up the item under consideration. The relator's contention is that these unfulfilled subscriptions constitute a debt to the subscribers, and of such a character as entitle it to deduct the same from its assets in determining the value of its stock for the purposes of taxation. I am of the opinion that a prepaid subscription is not a debt within the contemplation of the statute, which entitles the relator to a deduction. At most it is an obligation on the part of the relator to perform its contract, and could not by any possibility become a debt within the contemplation of the Tax Law until it had defaulted in so doing. The relator is solvent, it has in its assets money thus received, and no claim is made, or even suggested, that it is not pecuniarily responsible or able to fully perform its obligation

by printing and publishing the periodicals for which it has received advance payment. Its obligation to print and publish the periodicals is a contract obligation and not a moneyed one. In no sense do I believe it can be considered a debt within the meaning of the Tax Law. People ex rel. Strauss v. Coleman, 44 Hun, 20. If considered a debt, the relator's liability is so speculative and remote that the commissioners were justified in refusing to deduct it. People ex rel. National Surety Co. v. Feitner, 166 N. Y. 129, 59 N. E. 731; People ex rel. N. Y. & N. J. Tel. Co. v. Neff, 15 App. Div. 8, 44 N. Y. Supp. 46, affirmed on opinion below 156 N. Y. 701, 51 N. E. 1093.

The case last cited, as I read the opinion, is directly in point. There the telephone company claimed a deduction for advance payments for telephone service, and in holding that money thus received was not entitled to be deducted the court said:

"The unearned rentals consist of advance payments for telephone service without, so far as appears, any option on the part of those making the payments to relinquish and have the amount paid refunded; but it seems that the right to repayment is wholly dependent upon the default of the relator, and as there is no reasonable ground to apprehend its failure, since it has a fair surplus and pays 7 per cent. dividends on its stock, the advance moneys paid on rentals may properly be included in the assets of the relator. * * * The liability of the relator to repay the money so advanced is too slight, speculative, and remote to require consideration."

Here the relator does not claim that it was, at the time the assessment was made, under any obligation to return any portion of the advance subscriptions, and, of course, it could not be compelled to do so, unless it failed to fulfill its agreement in respect to furnishing the periodicals. It appears, as already indicated, that it is able to carry out these contracts, and there is not even a suggestion made that it will, in the future, be unable to do so.

[2] Second. As to the amount of $397,151.04. The relator, in addition to publishing periodicals, is engaged in selling paper patterns. It sells these patterns to merchants under a written contract by which each agrees to purchase and keep on hand at all times during the life of a contract a given number of patterns, and at the termination of the contract the relator agrees to repurchase these that have not been sold, and to pay therefore 75 per cent. of the price which the merchants paid. The sum here under consideration is the amount received for patterns which had not, at the time the assessment was made, been sold by the merchants. The contracts under which they had been delivered by the relator had not expired, and whether they would be sold before that time was not made to appear, and obviously could not have been, because neither the relator nor the merchants could tell what the future would develop. The liability of the relator to redeem or take back the patterns, or any of them, is in many respects similar to the liability of a fire insurance company to return a portion of a premium on the surrender of a policy. The contract of insurance gives to the insured the right to have his policy canceled, and, if he does so, entitles him to a portion of the unearned premium. Here the contracts under which the patterns are delivered give to the

parties receiving them the right to return them, and in that case to receive a portion of the purchase price. It may be that the relator will have to redeem some of the patterns on contracts which were outstanding at the time the assessment was made; but upon what contracts, or how many patterns, could not be ascertained, so that its liability in this respect was not only contingent, but purely speculative.

In denying the right of a fire insurance company to deduct the amount of unearned premiums, the court, in People ex rel. Westchester Fire Ins. Co. v. Davenport, 91 N. Y. 574, said:

"The liability of an insurance company to refund any part of the premiums received by it is remote and contingent, and does not constitute one of the objects contemplated by either party in entering into a contract of insurance. * * * Neither in law nor equity does this liability constitute a debt owing by an insurance company, which should be deducted from the value of its taxable property when it is called upon to bear its proportion of the burdens of government."

This authority was followed and approved in People ex rel. American Fire Ins. Co. v. Feitner, 168 N. Y. 675, 61 N. E. 1132. See, also, People ex rel. National Surety Co. v. Feitner, supra.

I am of the opinion the order appealed from is right, and should be affirmed, with costs.

CLARKE and DOWLING, JJ., concur.

SCOTT, J. I am constrained to dissent from so much of the opinion of my Brother McLAUGHLIN as sustains the action of the commissioners in refusing to deduct from the relator's assessable property the amount held by it as advance subscriptions for periodicals not yet printed or delivered on the day as to which the assessments were fixed. When the relator received advance subscriptions, it sold to the subscribers monthly issues of its periodicals for the terms covered by the subscriptions. It owed them thereafter, in the form of periodicals, if not of money, in each month a proportionate equivalent of the sum paid. In other words, it received from each subscriber a sum of money which it agreed to repay, in the form of periodicals, in monthly or weekly installments. The case is, as it seems to me, much more closely analogous to the accruing interest on outstanding mortgages, dealt with in People ex rel. N. Y. & N. J. Telephone Co. v. Neff, 15 App. Div. 8, 13, 44 N. Y. Supp. 46, 50, than to the unearned rentals dealt with in the same opinion. With regard to the interest or mortgages the court said:

"It appears that monthly the relator charged up to its indebtedness one-twelfth of the accruing interest for one year upon its outstanding mortgage debts. This item in the statement represents the interest which had accrued on such debts during the first four months of the year. No reason appears why it may and should not be treated as a debt, although not then mentioned."

The present case presents the converse of that proposition. When relator receives a subscription, say for a year, it at once becomes indebted to its subscriber to deliver him periodicals during the year. As each monthly or weekly periodical is delivered, the debt is pro tanto

paid and reduced; but some part of the indebtedness remains until the whole debt is extinguished. The prepaid telephone rentals, referred to in the Telephone Company Case cited above, are very different. In that case all that the company sold was service, and there could be no claim to repayment, except in the very improbable contingency of the company's failure. In the present case the relator sold goods for future delivery, and no contingency is suggested under which it would be absolved from its obligation. A debt is no less a debt because it is payable in goods, instead of money. "A debt, in its most general sense, is defined to be that which is due from one person to another, whether money, *goods*, or services; that which one person is bound to 'pay or perform to another.'" Newell v. People, 7 N. Y. 9, 124. See, also, Latimer v. Veader, 20 App. Div. 418, 46 N. Y. Supp. 823; 13 Cyc. p. 394.

While the time of payment is remote, the obligation to pay is present. In this respect the obligation to deliver the periodicals in the future is not unlike the indebtedness represented by a note, not yet due, or a demand note, upon which demand has not yet been made. It is not to be lost sight of that, in assessing a corporation for taxation, the purpose is not to assess its property as such, but to ascertain the value of its capital stock. This is ascertained by first fixing the value of its assets, and deducting from that sum its liabilities, whether payable presently or in the future. The subscriptions received for periodicals to be issued in the future have, as it appears, been included in the assets of relator, and it would be manifestly unfair, as it seems to me, not to deduct the remaining obligations arising from these subscriptions, the amount of which is neither contingent, uncertain, nor speculative.

In other respects, I concur with Mr. Justice McLAUGHLIN.

INGRAHAM, P. J., concurs.