THE PEOPLE ex rel. GLENN'S FALLS INSURANCE
COMPANY v. HENRY FERGUSON et al., the Asses-
sors of Queensbury.

*Certiorari—Assessments—Corporations—Capital.*

Under the statutes respecting assessments, passed in 1853, and also in 1857,
insurance and other corporations are to be assessed upon the actual value of
their capital; and in determining the value of the capital stock, allowance
must be made for their contingent liability on their policies which are out-
standing.

A refusal on the part of assessors to make deductions for such contingent
liabilities, is an error which may be corrected by certiorari.

This was a common law certiorari to review the action of the
assessors of the town of Queensbury, and compel them to strike
from the assessment roll of said town, for 1866, an assessment for
personal property, and an entry on the assessment roll of per-
sonal property erroneously omitted in 1865. Instead of a re-
turn, the case has been argued upon a statement agreed upon as
the facts, with a stipulation for the entry of judgment.

The case presents two questions for consideration:

1. Was the entry on the assessment roll of $30,000, as for
personal property, alleged to have been erroneously omitted from
the roll of 1865, authorized?

2. Was the assessment for $40,000, as for personal property,
legal?

The first question was decided in favor of the Relators by the
General Term, and as no appeal is taken from that decision by the
assessors, the point does not arise in this Court, and the statement
of facts respecting the same is omitted here.

Second. Upon the liability of the Relators to an assessment of
$40,000 for personal property, the facts are these: The capital of
the corporation is $100,000, all of which is paid in, and its sur-
plus profits is $141,932.55; making, in all, $241,932.55.

Statement of the Case.

Its assets are the following :

| | | |
|---|---:|---:|
| U. S. securities.................... | $160,400 | 00 |
| Bonds and mortgages............... | . 36,305 | 56 |
| New York bounty loan............. | 3,000 | 00 |
| 198 shares bank stock .............. | 9,900 | 00 |
| Cash on hand and in bank.......... | 19,575 | 59 |
| Cash due from agents.............. | 7,251 | 40 |
| Real estate, office, &c.............. | 5,500 | 00 |
| | | $241,932 55 |

Of these the following are exempt from taxation, or are otherwise taxed, viz. :

| | | |
|---|---:|---:|
| U. S. securities.................... | $160,400 | 00 |
| Bank stock........................ | 9,900 | 00 |
| Real estate, office, &c.... .......... | 5,500 | 00 |

And the following items are to be deducted, viz. :

| | | |
|---|---:|---:|
| Losses unpaid ..................... | 9,642 | 00 |
| 10 per cent. on its capital........... | 10,000 | 00 |
| | | $195,442 00 |

Leaving, after these deductions...............$46,490 55

It further appeared that there were outstanding policies of insurance, in full force, exceeding in amount $22,000,000, on which the premiums had been received and included in the assets of the company, and that it would cost $80,000 to reinsure such outstanding risks. It was also shown that said corporation made a dividend of 10 per cent. last January, which was the first dividend it had ever made; that there had been some sales of its stock just prior to such dividend, at ten or twelve per cent. premium, which was the highest price ever paid for said stock, or for which it had ever sold; that since said dividend there had been several sales, but none at a higher price than par value, together with interest added from date of dividend to time of sale. The assessors refused to make any allowances on this account, but assessed the company upon the sum of $40,000. In

their appeal to the General Term of the Fourth District, this decision was affirmed, and the Relators now appeal to this Court.

*S. Brown* for Appellants.

*Isaac Mott* for Respondents.

HUNT, CH.J.—Prior to the year 1853 moneyed corporations were assessed upon the amount of their nominal capital, whether its value in fact was more or less than its nominal amount (People *v.* Dolan, 36 N. Y. R. 62). In that year, and again in 1857 (Laws 1857, 2d vol. p. 1), the statute was amended, so that the assessment was made upon the capital stock and its surplus pro-- fits exceeding ten per cent., " at its actual value." The principle of assessing upon the actual value of the stock, instead of its nominal amount, was then introduced (auth. sup.).

The rule of assessing individuals upon their personal property is expressed in different language. It is in these words : " The full value of all the taxable personal property owned by such person, after deducting the just debts owing by him " (1 R. S. 391). The assessors, and the General Term, held that these two pro- visions furnished substantially the same rule. They held that the contingent liability of the company was not a debt owing by it, and that no deduction could therefore be made from the assess- ment on that account. I agree that this liability was not a debt owing by the company, and that if the same facts had been pre- sented in behalf of an individual, he would not have been entitled to the deduction now claimed. If it is a debt, to whom is it owing ? If a debt, what is its amount in figures, and upon what policy has it accrued ? It is impossible to answer these questions, because, in fact, there is no present debt to any one.

I do not, however, agree in the conclusion of the Supreme Court, that therefore there can be no deduction on account of this circumstance. These questions are pertinent and conclusive in the case of an individual. He is entitled to deduct only the " just debts owing by him." As to him, there must be a creditor to whom the debt is owing, an amount certain, or capable of being reduced to certainty, and a contract or judgment upon

which a debt arises. Not so, however, as to a corporation like that in question. The rule of assessment there is "the actual value" of the capital. If a corporation or an individual has an actual estate in possession of $100,000, and is liable as guarantor, or indemnitor, or endorser, or bail, for $50,000, and the principal in all these liabilities is insolvent, so that he will certainly have to pay the $50,000, is not the actual value of his estate reduced by that amount? True, he cannot be said to owe that amount until the lapse of time, or a notice of non-payment, or some other occurrence will entitle some other party to commence an action against him. His actual estate, however, is reduced in value by just that amount. No assessor or individual could justly say that "the actual value" of his estate, subject to these contingencies, was as great as it would be if free and clear from them. No man would give him as much for his estate, subject to these claims, as if there were no such claims. Whether tested by the standard of market or selling value, or by what it will ultimately produce to the possessor, the contingent liabilities make a reduction of value. (Oswego Starch Co. *v.* Dolloway, 21 N. Y. 458). I think it was an error in the assessors to refuse to make these deductions. There was no practical difficulty in reaching a result by the aid of authentic tables, and by such evidence as long-established insurance companies can readily furnish. It was the duty of the assessors to act upon the evidence before them, and to adjudge how much the actual value of the stock was reduced by these contingent liabilities, and to deduct from the assessment accordingly.

The evidence, as presented, showed that the reduction would more than equal the surplus as found by the assessors, and there was nothing in contradiction or disparagement of this evidence Their action is judicial, and to be governed by the evidence before them. All the evidence before them in the present case showed that there was a contingent liability sufficient to absorb all the surplus, and I see nothing to cast doubt or suspicion upon it. The assessors should have decided in accordance with the evidence (People *v.* Reddy, 43 Barb. 543; Oswego S. Co. *v.* Dol-

loway, 21 N. Y. R. 460). There is nothing in the case to indicate that the roll is not still in the hands of the assessors; and they may yet correct their error by striking out the assessment of $40,000 for the year 1866.

The judgment should be reversed, and the assessors ordered to correct the roll by striking out said sum of $40,000, assessed to the Appellants for the year 1866.

Reversed.

JOEL TIFFANY,
State Reporter.