THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE SECOND AVENUE RAILROAD COMPANY, Respondent, *v.* EDWARD P. BARKER, THOMAS L. FEITNER and EDWARD L. PARRIS, as Commissioners of Taxes and Assessments for the City and County of New York, Appellants.

*Assessment of a corporation for purposes of taxation — " capital stock" denotes the property not the shares of stock — realty and personalty must be separately valued — the debts of a corporation must be considered or deducted.*

The term "capital stock," as used in section 3 of chapter 456 of the Laws of 1857, denotes the property owned by the corporation, and not the par or actual value of the shares issued to and held by its stockholders.

The realty and personalty of a corporation organized under chapter 140 of the Laws of 1850 must be separately valued for the purposes of taxation, and if

PEOPLE ex rel. SECOND AVE. R. R. CO. v. BARKER. 127

Hun.]          First Department, October Term, 1893.

the personalty be overvalued and the realty undervalued on the roll, the valuation of the personalty cannot be sustained on the theory that the undervaluation of the realty equals or exceeds the overvaluation of the personalty.

Commissioners are required to deduct from the gross amount of the personalty of a corporation its just debts in determining the amount for which it should be assessed for taxation, or, in estimating the value of the property, they should take into account those debts.

Appeal by Edward P. Barker, Thomas L. Feitner and Edward L. Parris, as commissioners of taxes and assessments for the city and county of New York, from an order made at the New York Special Term on the 27th day of March, 1893, and entered in the office of the clerk of the city and county of New York upon the report of a referee, and declaring their proceedings and adjudication in assessing the capital stock of the relator for the year 1892 to be illegal, erroneous and void, and directing that said proceedings and adjudication be reversed, and said assessment be vacated and stricken from the roll, and directing that the taxes heretofore paid by the relator upon said assessment be audited and allowed and paid to the relator, and included in the taxes levied in 1894.

The Second Avenue railroad was incorporated January 21, 1853, under chapter 140 of the Laws of 1850 (the General Railroad Act), and thereafter constructed and operated, with horses, a road in various streets in the city of New York, and, pursuant to chapter 240 of the Laws of 1872, and chapter 252 of the Laws of 1884, it extended and operated tracks in other streets of the city. Its authorized capital is $2,500,000, which is divided into 25,000 shares of $100 each. But 18,620 shares have been issued, amounting at their par value to $1,862,000. In 1892 the commissioners of taxes and assessments valued the capital of the corporation for the purpose of taxation at $1,500,000. The value of the real estate of the corporation, as fixed in 1892 by the commissioners for the purpose of taxation, was $531,027, which sum, deducted from $1,500,000, left $968,972 as the assessed valuation of the personalty of the corporation. It is not asserted by the corporation that the commissioners' valuation of its property exceeded the actual value, nor that the valuation placed on its realty was excessive. At the time this valuation was made the corporation was indebted in the sum of $1,938,873, which is $438,873 more than the assessed valuation of its real and personal property.

In 1891 the corporation paid a dividend of four per cent on its

outstanding shares. The corporation insisted before the commissioners that it was not liable to be assessed on its personalty because its indebtedness largely exceeded the value of its entire personal property. The commissioners refused to allow the claim of the corporation and valued its personalty at $968,972, and entered that valuation on the roll as the basis for taxation. The corporation obtained a writ of certiorari, under chapter 269 of the Laws of 1880, to review the assessment, and a reference was had to take and report the evidence offered by the litigants. Upon the coming in of the report, the assessment on the personalty of the corporation was vacated and set aside. From that order this appeal is taken.

*George S. Coleman*, for the appellants.

*Charles E. Miller*, for the respondent.

FOLLETT, J. :

It was conceded by the counsel for the commissioners on the hearing before the referee that the actual value of the realty of the corporation did not exceed $1,000,000, and he concedes in his brief that the evidence returned by the referee shows that the actual value of its personalty did not exceed $590,269, which fixes the total value of the relator's property at $1,390,269, which is $348,604 less than its liabilities. The learned counsel for the appellants states in his brief that the only question which he presents for consideration on this appeal is : " Whether, as a matter of law, the debts of the relator were necessarily deductible from the value of its corporate assets ? " Section 3 of chapter 456 of the Laws of 1857 provides :

" § 3. The capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or as shall have been exempted by law, together with its surplus profits or reserved funds, exceeding ten per cent of its capital, after deducting the assessed value of its real estate, and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock under the laws of this State, shall be assessed at its actual value, and taxed in the same manner as the other personal and real estate of the county."

This section has been several times considered by the courts, and it is now settled that the term " capital stock " as used, therein denotes

the property owned by the corporation and not the par or actual value of the shares issued to and held by its stockholders. (*People ex rel. U. T. Co.* v. *Coleman et al.*, 126 N. Y. 433.) Neither the par nor the actual value of all the shares issued by the corporation is necessarily the measure of the actual value of its capital — property — but such value is to be ascertained by evidence or inquiry.

The record conclusively showing that the value of the property, real and personal, of the corporation is considerably less than the par value of its shares issued and held by its stockholders, we need not concern ourselves with the meaning of the term " surplus profits or reserved funds," used in the section quoted. The word " capital" in this judgment is used as denoting all of the property of every kind owned by the corporation.

In this case the commissioners estimated the real and personal property of the corporation to be worth $1,500,000. They estimated the value of the realty at $531,027, and they reached the value of personalty by deducting the latter amount from the former. The evidence returned by the referee shows, as the learned counsel for the appellants concedes, that the actual value of its personalty did not exceed $590,269. Realty and personalty must be separately valued for the purposes of taxation, and if the personalty be overvalued and the realty undervalued on the roll the valuation of the personalty cannot be sustained on the theory that the undervaluation of the realty equals or exceeds the overvaluation of the personalty. It is apparent, therefore, that the assessment against the relator for personalty was excessive. Should the relator have been assessed any amount on its personalty?

In *The People ex rel. Glens Falls Ins. Co.* v. *Ferguson et al., Commissioners, etc.* (38 N. Y. 89), an assessment was made against the relator for $40,000 for personal property. The share capital of the corporation was $100,000, all of which had been paid in, and it had a surplus of $141,932.55. It had personalty of the value of $236,432.55, and real estate of the value of $5,500. After deducting from the personalty the property which was not liable to taxation there was left $46,490.55, but the relator had outstanding policies in force which it would cost $80,000 to reinsure. The commissioners refused to make any allowance for this contingent liability,

130 PEOPLE ex rel. SECOND AVE. R. R. CO. *v.* BARKER.

First Department, October Term, 1893. [Vol. 72.

and assessed the corporation upon $40,000 for its personalty. Their action was reviewed on certiorari and affirmed at General Term, but on appeal to the Court of Appeals it was reversed, and the commissioners were ordered to vacate their assessment on the personalty. The 3d section of chapter 456, Laws of 1857, was considered, and it was held that this contingent liability was not a debt, but that it was to be considered in ascertaining the actual value of the capital or property of the corporation.

In *The People ex rel. The Pacific Mail Steamship Co.* v. *Commissioners of Taxes and Assessments* (46 How. Pr. 315; S. C., 1 T. & C. 611), it was stated, although the question was not involved: " I may add to this, in addition, it would equally be the duty of the commissioners to consider the indebtedness (of the corporation) as reducing the actual value of the stock and form their estimate on that basis. The valuation was reduced one-half, a sum much larger than any indebtedness of the company, and there is no ground for supposing the commissioners did not consider such indebtedness in making the assessment."

In *The People ex rel. The West Side & Yonkers Railway Co.* v. *The Commissioners of Taxes and Assessments* (31 Hun, 32), the par value of the relator's shares outstanding was $10,000. It owned real estate of the value of $183,000. An assessment of $10,000 was made upon the capital stock. The relator insisted that the assessment for personalty was invalid because a mortgage made by another railroad corporation as security for $4,000,000 of bonds covered the property of the relator, and that this lien should be considered in determining the actual value of the relator's capital. It was held that this sum was to be considered in determining the actual value of the relator's property, and that as it exceeded its assets the corporation was not liable to be assessed for personalty.

In *People ex rel. Butchers Hyde and Melting Co.* v. *Asten et al., Commissioners* (100 N. Y. 597), the relator had a share capital of $200,000, which had been paid in and invested in real estate on which there was a mortgage for $80,000 given as security for the bonds of the corporation. Its real estate was valued by the commissioners at $100,000. It held stocks in other corporations of the value of $36,500. These two sums, aggregating $136,500, were deducted from the amount of the share capital, which left a

remainder of $63,500, on which the corporation was assessed. The relator insisted, among other things, that the amount of its debt, $80,000, should have been deducted. It was held that the evidence did not show that the value fixed by the commissioners was incorrect, and the assessment was affirmed. The court, in the course of its discussion, said : " There is no provision of law which authorizes a deduction from the capital stock by reason of the indebtedness of the company. While this indebtedness is a proper subject for consideration in estimating the value of the stock, there is no authority for its deduction from the value of the stock after the estimate has been made."

In *People ex rel. The Commonwealth Ins. Co.* v. *Coleman et al.* (16 N. Y. St. Repr. 940 ; affd., 112 N. Y. 565), the relator's share capital was $300,000, and it had a gross surplus of $45,885. Its liability for unearned premiums was $24,666, which, deducted from the gross surplus, left a net surplus of $21,219, making its assets, assuming that its property outside of its net surplus was worth $300,000, $321,219. Of this amount $304,575 were invested in United States bonds, which, deducted from the total assets of the corporation, left $16,644, which sum was the assessed value of the relator's property as fixed by the commissioners. The Special Term held that the deduction by the commissioners of $24,666, the liability for the unearned premiums, was erroneous and that the commissioners should have deducted ten per cent from the capital, $300,000, amounting to $30,000, which sum should have been added to the amount invested in United States bonds, $304,575, making an aggregate of $334,575, which latter sum should have been deducted from $345,885, the entire assets of the corporation, and imposed an assessment upon the remainder, $11,310.

The General Term held that the Special Term erred in refusing to deduct or take into account the liabilities of the corporation and vacated the assessment. In discussing the case it was said : " It is undoubtedly true that after an estimate of the value of the capital stock has been made there is no authority for the deduction of the indebtedness of the corporation, but it is also true that the indebtedness of a corporation is a proper subject for consideration in estimating the value of the stock, and in the conclusion at which the learned justice arrived in this case in determining the value of the

132 PEOPLE ex rel. SECOND AVE. R. R. CO. *v.* BARKER.

FIRST DEPARTMENT, OCTOBER TERM, 1893.          [Vol. 72.

capital stock the indebtedness of the corporation was not considered. There being no market for the stock of this company, its value was attempted to be ascertained by determining the value of its assets, and the aggregate value of its assets was $345,885.21.  If, however, the corporation was indebted this did not represent the actual value .of its capital stock, because such value was reduced by the amount of its indebtedness.  All the assets going to make up this aggregate had been assessed at their full market value, no deduction whatever being made therefrom.  Consequently the value of those assets was diminished in determining the value of the capital stock˙ by the amount of the indebtedness.  Therefore, deducting the amount of the indebtedness, which it is conceded amounted to $24,666.16, the total value of the capital stock of the corporation was $321,219.05.

" This deduction, however, the learned judge challenged upon the ground that it was improper to consider this indebtedness in ascertaining the value of the capital stock of a corporation liable to taxation.

" In this it appears he has fallen into an error.  It would be improper to deduct such indebtedness after having determined the value of the capital stock, because that would be deducting the indebtedness twice, but in estimating the value of the stock the indebtedness of the corporation is a proper subject for consideration."

It is alleged in the petition of the relator : " That on the second Monday of January, 1892, the total gross assets of your petitioner, exclusive of real estate and roadbed, did not exceed the sum of $590,269.12."  This is not denied by the return.  One of the commissioners testified before the referee, but made no claim that the debts of the corporation were taken into account in making up their estimate of the value of the capital of the relator, and the learned counsel for the appellants, in his brief, states that : " The gross assets of the relator then, on the second Monday of January, 1892, amounted to $1,590,269.  The respondents adopted a valuation of $1,500,000, from which they deducted the assessed value of real estate as required by law.  But the respondents did not deduct the indebtedness claimed by the relator, which exceeded the actual value of its real and personal property exclusive of franchises."

The cases cited all arose under chapter 456 of the Laws of 1857, and they are decisive of the case at bar.  The question cannot be

regarded as an open one in this court. But, apart from these decisions, we think the language of the statute requires the commissioners to deduct from the gross amount of the personalty of corporations their just debts in determining the amount for which they should be assessed for taxation, or that, in estimating the value of their property, they should take into account those debts. The same result is reached by either process. By the section quoted it is provided that, after making the deduction therein specified, the capital stock of corporations " shall be assessed at its actual value and taxed in the same manner as the other personal and real estate of the county." In assessing the personal property of the citizens of the county, the debts owing by them are to be deducted from the assessed valuation of such property. (1 R. S. 391, § 9.) The sentence last quoted does not, as contended by the learned counsel for the appellants, merely prescribe the procedure by which commissioners or assessors are to impose assessments upon the property of corporations. The mode of making assessments against corporations is provided for by the 6th and 15th sections of title 4 of chapter 13 of part 1 of the Revised Statutes, and the mode in which assessments are to be entered against corporations on assessment rolls is quite different from the mode in which they are to be entered against individuals. We think the sentence last quoted discloses an intent on the part of the Legislature to provide that corporations and individuals should be assessed on the same basis for their personalty. The theory of our statutes under which taxes are imposed is that only the personal property owned by persons or corporations is assessable, and that all property of the same kind is to be equally assessed, and, in the absence of a clear legislative expression, we cannot assume that the law-making power intended to impose a greater burden upon corporations than upon individuals on account of the personal property owned by them.

In 1885 the Legislature provided, in an act which, by its limitation as to inhabitants though not in terms, relates only to the county of Kings (Chap. 411, Laws 1885, § 4), that the assessors of the towns of that county, in assessing the personal property of corporations, should deduct their just debts. This section was amended by section 4 of chapter 202 of the Laws of 1892, and the same provision was continued. This seems to be a legislative con-

struction of the statute in respect to the assessment of corporations for their personal property, and we can see no reason why they should have intended to have provided a different basis of assessments in the towns in Kings county than in the other counties in the State.

The order should be affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Order affirmed, with costs.