the old and the new structures. For one story, at least, the two buildings did not come together, and above that they were separated by a partition wall. There was no communication inside between the new addition and the old building. The roofs did not evenly join on to each other, one being higher than the other. The parts of the old building and the new division had separate street numbers, and the new part or building in question, at this time, and at the time of defendant's application, and always, was used exclusively as a flat for dwelling purposes. I have no doubt but what, under these circumstances, it is to be treated as a separate and distinct building, used exclusively for dwelling purposes. The petition is granted, with costs.

Petition granted, with costs.

---

(37 App. Div. 330.)

PEOPLE ex rel. ROCHESTER RY. CO. v. POND et al.

(Supreme Court, Appellate Division, Fourth Department. February 3, 1899.)

TAXATION—CAPITAL STOCK OF CORPORATION.

Under Laws 1896, c. 908, § 12, providing that the capital stock of corporations, except such as shall be excepted in the assessment roll or shall be exempt by law, together with its surplus profits, after deducting the assessed value of its real estate, and stock in other corporations, owned by such company, which are taxable on their capital stock. "shall be assessed at its actual value," a corporation should be allowed to deduct its indebtedness, in ascertaining the value of its capital liable to taxation.

Appeal from special term.

Certiorari by the state, on the relation of the Rochester Railway Company, against Charles F. Pond and others, assessors of the city of Rochester. From a judgment directing that an assessment on the capital stock and personal property of the relator should be stricken from the roll, defendants appeal. Affirmed.

The following is the opinion of S. D. BENTLEY, Referee:

The relator brings certiorari to review and vacate an assessment made by the assessors of the city of Rochester for the general city taxes of 1897. The assessors assessed the relator for $700,000 upon its capital stock, and for $654,125 upon its real estate. The relator does not object to the valuation put upon its real estate, but claims that the valuation put upon its capital stock is excessive, and asks to have it wholly stricken off the roll, or that such valuation be reduced. The order of reference is: "To take evidence, and report the same to this court, together with his findings of fact and conclusions of law thereon, upon the question of the value of the relator's capital stock, of the amount and value of all of the property of the relator, and upon the amount of the indebtedness of the relator." Upon the hearing before me, it was stipulated that the value of relator's track, return wire, feeders, poles, and overhead construction, specified in Exhibit 3, was, in February, March, and April, 1897, $661,972. Relator's witness testified that all the other real estate of relator (shown in Schedule E) was worth at its fair market value in April, 1897, the amount shown in that schedule, namely, $276,583. This, added to the above value of track, etc., makes $938,575; being $248,450 more than the valuation put by the assessors upon relator's real estate. Mr. Burgess, the only one of the assessors examined before me, testified that, in making the assessment throughout the city, the assessors fixed the valuation at the actual,

the full, value, as they considered it; and in view of that evidence, and of the fact that the assessors have valued the real estate at $654,125, in my opinion that sum should be taken as its real value, and deducted from the value of its capital stock, under section 12 of the statute (Laws 1896, c. 908). The evidence before me was mainly directed to questions of the value of relator's personal property, capital stock, and to the amount of its indebtedness. There was practically no conflict of evidence upon these questions. The evidence of the value of the chattels and choses in action consists substantially of the testimony of relator's former president and of its employés, to the effect that the several lists and schedules of those matters which were submitted to the assessors at the time when relator appeared before the assessors and objected to the assessment were correct, and the values given therein the true values of such property. The evidence shows that the funded indebtedness of relator was $1,200 more than the amount shown in Schedule C (Exhibit 2), which was laid before the assessors, and was in fact $4,495,200; the difference of $1,200 being found in the amount of the second mortgage bonds issued, and in the amount of debenture bonds. The correct statement of those matters (as per Exhibit 6) shows that of the second mortgage bonds there had been issued $2,200 more than shown in Exhibit 1, and of the debenture $1,000 less. The proofs, in my opinion, establish that, at the time the assessment was made, relator's funded debt was $4,495,200, and its floating indebtedness was $255,993.54, and its total indebtedness was $4,751,193.54. The evidence given upon the question of the value of relator's personal property (lists of which are shown in Exhibits 4 and 5) was, from the nature of the case, the opinions of the witnesses, but the witnesses seemed to be competent and fair; and I have adopted their valuations, with which the counsel for respondents seemed to be satisfied, since he called no witnesses in opposition. This class of property was valued as follows by the witnesses, namely:

| | |
|---|---:|
| Rolling stock, tools, and machinery | $317,670 50 |
| Property in power station | 192,960 00 |
| Property in stock room | 20,577 49 |
| Accounts receivable | 1,534 68 |
| Office furniture, etc | 2,000 00 |
| In all | $534,742 67 |

In respect to the stock of other corporations held by the relator, there is a discrepancy between Schedule C, which was laid before the assessors, and the testimony of Mr. Beckley, given before me. In Schedule C the stock of the Rochester Electric Railway Company held by relator is stated at 1,369 shares. Mr. Beckley states it at 1,390 shares, or at $139,000. I adopt Mr. Beckley's statement of that matter, and find that relator's holdings in other corporations were, viz.:

| | |
|---|---:|
| Stock of Rochester Electric Railway Company, par value | $139,000 00 |
| Stock of Rochester & Charlotte Turnpike Company, par | 2,200 00 |
| Stock of Rochester & Lake Ontario Railway Company, par | 50,000 00 |
| Stock of Rochester Driving Park, par | 1,000 00 |
| Stock of Paul Boynton Chute Company, par | 1,000 00 |

As no evidence of the actual value of these stocks was given, except that afforded by Schedule C, I adopt relator's rate of valuation, and find those stocks were actually worth the following sums, namely:

| | |
|---|---:|
| 1,390 shares stock of Rochester Electric Railway Company | $194,600 00 |
| 44 shares stock of Rochester & Charlotte Turnpike Company | 2,200 00 |
| 50 shares stock of Rochester & Lake Ontario Railway Company | 10,000 00 |
| 10 shares stock of Rochester Driving Park | 1,500 00 |
| 10 shares stock of Paul Boynton Chute Company | 500 00 |
| | $208,800 00 |

Upon all the evidence and the admissions of these parties, I find that the amount and value of all the property of the relator at the time said assessment was made was as follows, namely:

Value of its tracks, poles, etc.............................. $661,972 00
Value of its detached real estate.......................... 276,583 00

     Total value of real estate........................... $938,555 00

—which was assessed on the roll at $654,125.

Value of its rolling stock, tools, and machinery............ $ 317,670 50
Value of its property in power station..................... 192,960 00
Value of its property in stock room....................... 20,577 49
Value of its property in accounts and bills receivable....... 1,534 68
Value of its office furniture, etc......................... 2,000 00

     Total value of chattels and choses.................. $ 534,742 67
Value of stock in other corporations...................... 208,800 00

     Total value of personal property.................... $ 743,542 67
Add total value of real property.......................... 938,555 00

     Total value of real and personal property........... $1,682,097 67

—which sum I find is the value of all relator's tangible assets.

I find that the amount of relator's indebtedness is $4,751,193.54.

The question of the value of the relator's capital stock is one of more difficulty. The evidence shows that relator has an authorized and actually issued share stock of $5,000,000. Of this, $4,000,000, together with $1,300,000 of its mortgage bonds, was issued to purchase the property and franchises of the Rochester City & Brighton Railway Company, the Cross Town Railroad Company, and the South Park Railroad Company. The first named was the predecessor of relator in operating a street railway in the city of Rochester. The other two were corporations having franchises to operate surface roads in certain streets of the city of Rochester at the time of relator's purchase, but neither of them was in actual operation, carrying passengers. The Rochester City & Brighton Railway Company, at the time of the purchase by relator, was operating its cars by horse power. Soon after relator purchased, the entire system was changed to electric power, at very great expense,—far greater than would now be the expense to equip relator's road with equally good appliances. It appears from the evidence that, practically, the relator paid $4,000,000 of its share stock and $1,300,000 of its mortgage bonds for the franchises and the real estate of the companies which it bought out; the amount realized upon the sale of the old horse cars and horses not having been sufficient to reduce that cost greatly. Manifestly, those franchises were and are valuable, and materially enhance the selling price of relator's share stock in the market. Mr. Beckley testifies that there were sales of the share stock in the spring of 1897, in small lots, at from 15 to 20 cents on the dollar, but that the stock was not a listed stock, had no quoted market value, and that no large amount of it was salable at even those prices. In short, there was no market value for the stock fixed by sales at or about the time of the assessment.

The real question for determination by the assessors, as well as that now before me for determination, is, what was the actual value of relator's capital stock at the time the assessment was made? Section 12 of chapter 908 of the Laws of 1896 provides that "the capital stock of every company liable to taxation, except such part of it as shall have been excepted in the assessment roll, or shall be exempt by law, together with its surplus profits or reserve funds exceeding ten per centum of its capital, after deducting the assessed value of its real estate and all shares of stock in other corporations actually owned by such company which are taxable upon their capital stock under the laws of this state, shall be assessed at its actual value." The third section of chapter 456 of the Laws of 1857 was in the same language as the above-quoted section of the general tax law of 1896, save that at the end of section 3 of chapter 456 of the Laws of 1857, there followed the words, "and taxed in the same manner as the other personal and real estate of the county." The learned counsel for respondents contended that the legislature has manifested an intention to change the law of 1857 by omitting the phrase above quoted from section 3,

when that section was enacted as section 12 of chapter 908 of the Laws of 1896. I find myself unable to agree with him in his view, or with his construction of the last-mentioned section. By reference to the report of the commissioners of statutory revision, presented to the legislature of 1896, wherein they report the general tax law, it will appear that the commissioners stated that section 12 of the general tax law was section 3 of chapter 456 of the Laws of 1857, "without change." This would seem to make it clear that the commissioners did not intend to make any change in section 3 of chapter 456 of the Laws of 1857. The legislature enacted section 12 as it came from the hands of the commissioners, and without amendment. It is to be assumed that the legislature had the commissioners' note before it, and agreed with the commissioners' interpretation, that section 12, as reported, meant the same as section 3 of the act of 1857. Furthermore, section 12 of chapter 908 of the Laws of 1896 requires, as did section 3 of chapter 456 of the Laws of 1857, that such capital stock "shall be assessed at its actual value." The contention of the learned counsel for respondents was that the allowance for debts was required to be made under the statute of 1857, because of the provision of section 3, that such capital stock shall be "taxed in the same manner as the other personal and real estate of the county," and because such allowance or deduction was required to be made in taxing the other personal property of the county by section 9, art. 2, tit. 2, c. 13, pt. 1, Rev. St., as amended by chapter 202 of the Laws of 1892. He urges that it was because of the words found in the statute of 1857, which are not in the statute of 1896, that the courts have held that under the statute of 1857 such allowance for debts was to be made. It seems to me that such was not the reason for the construction put upon section 3 of chapter 456 of the Laws of 1857 by the courts, but that the reason for the rule requiring the allowance for debts to be made was found in the requirement of that statute that the capital stock of incorporated companies be "assessed at its actual value," and that the same words in the statute of 1896 require the application of the same rule of valuation, and require the assessors to make allowance for the just debts of the relator. It would seem that the actual value of the capital stock of the relator cannot be ascertained without deducting from the nominal value of its capital stock the amount of the just debts of the company. To quote the illustration used by the court in People v. Ferguson, 38 N. Y. 89, if a corporation or an individual has an estate in possession of $100,000, and is liable for $50,000 of debts, is not the actual value of his estate reduced by that amount? No individual, nor any assessor, could justly say that the actual value of such an estate, thus liable for $50,000 of debts, would be as great as it would be if free from debt. It would seem that the actual value of any estate, whether it be capital stock of a corporation or private property of an individual, must be simply what is left after deducting the just debts of the owner of such property. It is to be observed that the case of People v. Ferguson, 38 N. Y. 89, was certiorari by a corporation to review an assessment made, under chapter 456 of the Laws of 1857, on its capital stock. In People v. Asten, 100 N. Y. 597, 3 N. E. 788, the court expressly recognizes that the indebtedness of the corporation is to be taken into consideration in estimating the value of the capital stock. To the same effect is People v. Barker, 141 N. Y. 196, 36 N. E. 184.

No inconsiderable confusion of ideas appears in the decisions, and not a little exists in the minds of assessors, arising from the use of the phrase, "capital stock of a corporation," in ambiguous senses. Sometimes the phrase is used to mean the company's capital existing in money or property, or both, and sometimes to mean the shareholders' stock, which is representative, not merely of the existing and tangible property of the company, but also of its surplus, its dividend earning power, its franchise and good will as an established business. The former meaning is the sense in which the phrase is used in the statute under consideration. The subject-matter of the assessment, and the thing to be valued by the assessors at its "actual value," is the capital stock of the company; that is, simply the company's capital existing in money or property, or both. People v. Coleman, 126 N. Y. 433, 27 N. E. 818. In that case the court says (page 448, 126 N. Y., and page 822, 27 N. E.): "And so I think the authorities either fairly permit or fully justify the conclusions which I have reached, and which may be stated with reasonable

accuracy thus: First. The subject of valuation and assessment is never the share stock, but always the company's capital and surplus. Second. Such capital and surplus must be assessed at its own value; and, when that is correctly known and ascertained, no other value can be substituted for it. Third. Where its amount and value are undisclosed and unknown, the assessors may consider the market value of the share stock, and the general condition of the company, as indicative of surplus or deficiency, and of the probable amount of either. Fourth. They may further resort to such means of information when the amount of capital and surplus is disclosed, but the assessors have sufficient reason to disbelieve the statement, and such reason is founded upon facts established by competent proof." In that case the corporation had presented to the assessors a sworn statement of its assets and liabilities, as relator did in the case before us. In speaking of that statement, the court says (page 449, 126 N. Y., and page 822, 27 N. E.): "If it be true, there was noth- ing subject to assessment. But its truth is not questioned, and there is not the least reason to doubt it. The assessors did not doubt it. They merely deemed it immaterial, and so testified when examined. In other words, knowing with certainty the value of one thing, they claimed the right to affix to it the larger value of a different thing. Authorized only to tax against the company its capital and surplus, they assumed the right, practically, to tax it for the share stock held by individuals. They have not in terms claimed that the share stock is the subject of taxation, nor has the counsel who represented them on the argument, but both have maintained and defended what is the exact and complete equivalent. The right asserted is a discretion in the assessors at their free will to assess corporations upon and at the value of their capital and surplus, or upon and at the value of the share stock, independently of established facts, and whenever they please. The law gives them no such discretion." It seems to me that further elaboration is unnecessary. Other decisions to the same effect might be cited. It was not contended at the argument, as, indeed, it could not be, in view of the decisions, that the value of relator's franchise can be taken as an element of value in its capital stock to be assessed by the relator. The doctrine is distinctly so ruled in People v. Barker, 146 N. Y. 304, 40 N. E. 996.

I think that the evidence clearly establishes that, at the time the assessment was made, the capital stock of the relator had no actual value, "after deducting the assessed value of its real estate and all shares of stock in other corporations actually owned by such company, which are taxable upon their capital stock, under the laws of this state." Therefore, in my opinion, the entire assessment upon relator's capital stock should be stricken from the roll.

## The following is the opinion of NASH, J., at special term:

I concur with the referee in his findings of fact and conclusions of law, and in his opinion.

The point made by counsel for the respondents, before the referee, that the omission in the revision of the tax laws of the words, "and taxed in the same manner as the other personal and real estate of the county," which were in the Revised Statutes and the Laws of 1857, signifies an intention on the part of the legislature to change the method of ascertaining the value of the capital of corporations liable to taxation, is further urged upon our attention. I am well satisfied with the reasoning of the referee upon that point, and am of the opinion that there is no force in the suggestion; and it may be added that the omitted words could have no place in the recast which the revisers have made of the statutes relating to the assessment of taxation of the property of corporations. The statute, as it stood prior to the revision, provided that the capital stock of incorporated companies should be assessed and taxed in the same manner as the other real and personal estate of the county. It was provided that the other personal property of the county should be assessed by setting down in the roll the full value of all taxable personal property owned by a person, after "deducting the just debts owing by him;" and under those statutes the personal property of a corporation was assessed by deducting from the capital liable to assessment the amount of the debts owing by the company as in the case of individuals. In the revision, instead of referring to another statute or part of the statute for the method of assess-

ment, the sections of the statute relating to the method of assessment are complete in themselves, and provide that the capital liable to taxation shall be assessed at its actual value. To add to that phrase the words, "taxed in the same manner as the other personal and real estate of the county" is assessed, would make the statute read, "The capital of a corporation liable to taxation shall be assessed at its actual value, deducting the just debts owing by it," which phrase would be meaningless and obviously absurd. In the plan adopted by the revisers, of making the sections regarding the method of the assessment of property of a corporation complete, no qualification of the phrase "actual value" was required or permissible, unless it was designed that a corporation should not be allowed to deduct its indebtedness in ascertaining the value of its capital liable to taxation. A final order may be entered herein granting the relief prayed for in the petition.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, McLENNAN, and SPRING, JJ.

George V. Fleckenstein, for appellants.

Charles J. Bissell, for respondent.

PER CURIAM.    Judgment of the special term affirmed, with costs, on the opinion of S. D. BENTLEY, Referee, and of NASH, J., delivered at special term.

─────────────

(26 Misc. Rep. 518.)

### CITIZENS' BANK OF BUFFALO v. WEINBERG.

#### SAME v. JANOWITZ.

#### SAME v. WEISS.

(Supreme Court, Special Term, New York County.    February, 1899.)

1. CORPORATIONS—ACTION AGAINST STOCKHOLDERS—COMPLAINT.

    In an action against a stockholder of a corporation by an alleged creditor of the corporation, a complaint alleging that the company was indebted for money advanced, and, to secure the payment of a draft by plaintiff therefor, the company made its check, which was protested for nonpayment and returned to plaintiff, and that an action was begun by plaintiff against the corporation, judgment recovered, and execution returned unsatisfied, within two years from the time the debt originated, and that defendant was a stockholder, sufficiently sets forth a cause of action.

2. SAME—PARTIES.

    In an action, under Stock Corporation Law (Laws 1892, c. 688) §§ 54, 55, against stockholders, by a judgment creditor, to enforce the liability of the stockholders, it is unnecessary to make the corporation, or any of its creditors, parties.

Actions by the Citizens' Bank of Buffalo against Julius Weinberg, Ignatz Janowitz, and Moritz Weiss.    Heard on demurrer to the complaints.    Demurrers overruled.

Benjamin & Loeser, for plaintiff.

Holm & Smith, for defendants.

NASH, J.    These actions are against stockholders of a stock corporation, to enforce their statutory liability as such, under sections 54 and 55 of the stock corporation law (Laws 1892, c. 688), and it is urged in support of the demurrer that the complaint does not contain the allegations necessary to charge the defendant, under the statute:    First, that there is no allegation in the complaint when