THE PEOPLE OF THE STATE OF NEW YORK ex rel. NATIONAL SURETY COMPANY, Appellant, *v.* THOMAS L. FEITNER et al., as Commissioners of Taxes and Assessments of the City of New York, Respondents.

166  129
168  676

TAX — DEDUCTIONS BY ASSESSORS MUST BE EXPRESSLY AUTHORIZED BY STATUTE — UNEARNED PREMIUMS OF SURETY COMPANY NOT DEDUCTIBLE. Assessors can make only such deductions from the gross value of the personal assets of a corporation as are expressly authorized by statute. In the absence of express statutory authority outstanding contingent liabilities are not deductible, and, therefore, in the assessment of a surety company, a fund described as "unearned premiums held as reinsurance reserve as required by law, being amount necessary to reinsure outstand-

**130**   People ex rel. Nat. Surety Co. *v.* Feitner.   [Mar.,

Statement of case.                              [Vol. 166.

ing risks," which is not a fund set apart with which to purchase reinsurance, but becomes the absolute property of the company without any liability upon its part to return any portion of the premiums paid, and is subject only to liabilities which may arise from its outstanding contracts of suretyship, which are, therefore, contingent, does not represent existing debts of the company, and cannot be deducted.

*People ex rel. Nat. Surety Co.* v. *Feitner,* 54 App. Div. 633, affirmed.

(Argued January 9, 1901; decided March 1, 1901.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, made November 9, 1900, affirming an order of Special Term dismissing a writ of certiorari brought to review an assessment against the capital and surplus of the relator made by the commissioners of taxes and assessments of the city of New York for purposes of taxation for the year 1899.

The facts, so far as material, are stated in the opinion.

*William B. Hornblower, Julien T. Davies, James Byrne* and *Mark W. Potter* for appellant. The judge at Special Term erred in holding that so-called contingent liabilities were not to be taken into account in determining the taxable valuation of relator's capital stock and surplus. (*People ex rel.* v. *Ferguson,* 38 N. Y. 89.) The amount for which the outstanding risks of the company can be reinsured in another solvent company is a measure of the amount of probable liability on outstanding risks. (*Cole* v. *M. I. Co.,* 133 N. Y. 164; *People* v. *S. L. Ins. & A. Co.,* 78 N. Y. 114.) The contingent liabilities of an insurance company represented by its outstanding policies of insurance must be taken into account in determining the value of its capital stock and surplus for purposes of taxation. (*People ex rel.* v. *Ferguson,* 38 N. Y. 89; *People ex rel.* v. *Comrs. of Taxes,* 76 N. Y. 64; *People ex rel.* v. *Davenport,* 91 N. Y. 574; *People ex rel.* v. *Coleman,* 107 N. Y. 541; *People ex rel.* v. *Comrs. of Taxes,* 46 How. Pr. 227; *Oswego S. Factory* v. *Dollaway,* 21 N. Y. 458; *People ex rel.* v. *Coleman,* 16 N. Y. S. R. 940; *People ex rel.* v. *Comrs. of Taxes,* 31 Hun, 32; *People ex rel.* v. *Barker,* 72 Hun, 126.)

*John Whalen, Corporation Counsel (James M. Ward* of counsel), for respondents.   The amount of reinsurance reserve held by insurance corporations, making the kind of insurance provided in subdivision 4 of section 70 of chapter 690 of the Laws of 1892, is an asset of such corporations and not a debt. (*People ex rel.* v. *Peck*, 157 N. Y. 54; *People ex rel.* v. *Davenport*, 91 N. Y. 574; *State* v. *Parker*, 35 N. J. L. 575.) For purposes of taxation, the actual value of the capital and surplus of the corporation is to be ascertained, and such value is not diminished or impaired or affected by contingent liabilities for reinsurance of risks. (*People ex rel.* v. *Davenport*, 91 N. Y. 574; *People ex rel.* v. *Coleman*, 126 N. Y. 436.)

PARKER, Ch. J.   The question of law presented is whether assessors may make further deductions from the capital stock of corporations than those expressly authorized by statute. It is asserted on the one hand that " irrespective of any express statute on the subject, the process of ascertaining the value of the capital stock of any corporation must necessarily include a deduction on account of its debts or of any outstanding contingent liability, such as insurance policies, though not due or payable at the time that the assessment is made." On the other hand, it is asserted that the only authority that assessors have to make deductions from the value of the capital stock of corporations is derived from the statute.   This latter position has a very recent authority in this court for its support. In *People ex rel. Cornell Steamboat Co.* v. *Dederick* (161 N. Y. 195) the question was mooted whether a recent amendment of the Tax Law operated to take away the right of corporations to have their debts deducted from the value of the capital stock for the purpose of assessment, and a reargument of the case was ordered for the purpose of bringing about a discussion of that question.   The outcome was a determination by this court that the legislature did not intend to change the policy of the law, by the change in phraseology adopted, so as to take away the authority which the statute had for a long time conferred upon assessors to deduct the debts of corpora-

tions as well as of individuals in assessing their personal prop-
erty; and the court, after a very careful consideration of the
statutory provisions, said: "Reading the Statutory Construc-
tion Law in connection with sections twelve, twenty-one and
thirty-seven of the Tax Law, we find that the statute affords
a simple method for the taxation of corporations as well as
individuals, providing for a deduction of the debts that are
owing by either."

It may possibly be that occasionally a more just result would
be obtained had the assessors power to deduct from the value
of the personal property not merely debts, but also outstand-
ing contingent liabilities, and that might be so if the assessors
were authorized to deduct from the value of real estate the
incumbrances thereon. But the assessors have no right to do
either, for the reason that the statute does not permit it, and
the court has no power to say that either shall be done, because
that is a legislative, not a judicial power. Our inquiry, there-
fore, should be whether the item which is the subject of this
controversy, was a debt on the part of the relator; if it were,
the assessors erred in not deducting it; if not, then there was
no authority for so doing.

The relator is a domestic corporation, incorporated under
the provisions of the Insurance Law and engaged in the busi-
ness of guaranteeing the fidelity of persons holding places of
public or private trust, as well as the performance of contracts
other than insurance policies, and of executing bonds and
undertakings required in legal proceedings. The relator was
assessed as of the second Monday of January, 1899, and in
the course of ascertaining the amount for which it should be
assessed, its gross assets were first valued at the sum of
$1,359,817.24. There was not and is not now any contro-
versy about this item, for the tax commissioners accepted the
relator's own valuation of its assets; but when it came to a
consideration of the deductions claimed by the relator there
was a disagreement, the relator claiming that the deductions
aggregated $1,363,655.04, or $3,837.80 more than the assets,
and had its claim been allowed therefor the result would have

been that it would not have been taxed at all.  All of the items that the relator claimed as deductible were allowed by the tax commissioners, except one, which was described in the relator's statement as being " unearned premiums held as reinsurance reserve, as required by law, being amount necessary to reinsure outstanding risks," amounting to $213,777.83. Now, this so-called unearned premium fund was not a fund set apart with which to purchase reinsurance.  It had passed into the treasury of the relator from time to time and was intermingled with its other assets, and thus had been used in the payment of the company's contract obligations and in such investments as the company, from time to time, deemed it wise to make.   In fire insurance companies the policyholders have a right to cancel the policies and demand from the company a return of a proportionate part of the premium paid to it; but even that is not so in this case, for the holders of its contracts of suretyship cannot regain any part of the premiums paid by offering to surrender up their contracts.  The company, therefore, becomes the absolute owner of the premiums paid, without any liability on its part to return any portion of them.   There was still the possibility that upon some of the contracts, by reason of the misconduct of persons whose fidelity it had guaranteed, it would be compelled to pay even a much larger sum than the premium received on the contract, indeed a sum that would equal the amount received on a great many contracts ; but upon which ones of the many contracts that it had outstanding there would accrue a liability on its part, could not be foretold at the time of the assessment. Hence, there was not an existing debt growing out of these contracts, nor were there any creditors having claims which they could enforce against the company in the amount of the so called reinsurance reserve, or any sum whatever.   There was, of course, the probability that before the next year should roll around the relator would be required to pay a considerable sum on account of the contracts which were then outstanding, and for which it had received the premiums, but as these contingent liabilities, which in the aggregate might equal the

unearned premiums, were not debts, the relator was not entitled to have them deducted from the value of its assets.    Indeed, this court said in *People ex rel. Westchester Fire Ins. Co.* v. *Davenport* (91 N. Y. 574, 583), while discussing the liability to taxation of unearned premiums, that "Neither in law nor equity does this liability constitute a debt owing by an insurance company which should be deducted from the value of its taxable property, when it is called upon to bear its proportion of the burdens of government."

If it were possible to concede that the assessors have the authority, irrespective of any express statute, to deduct from the value of the capital stock of any corporation "any outstanding contingent liability, such as insurance policies, though not due or payable at the time the assessment is made," I should contend that the action of the assessors in this case, in refusing to make the deduction, should not be interfered with by the court, because the claim for deduction seems to be without merit.    The assets of the corporation at its own. valuation still exceeded its debts and other items deductible by statute by $208,600.00.    That much of property, therefore, the relator owned and had on hand.    It is not pretended that it will not have that much property on hand a year later; indeed, it will probably have more, otherwise there would be little encouragement for it to continue in business.    What it asks is that, while it continues to be a going and growing concern, it shall be treated, for the purpose of taxation, as having stopped doing new business, being devoted solely to the winding up of its affairs and the payment of obligations as they accrue.    As a going concern, of course, it will quite likely receive premiums at least as rapidly, if not more rapidly, than liabilities on its contracts will accrue, so that in a given time it will in fact have as much, if not more, gross assets than it had on the day when the assessment was made.

It is said on the part of the relator that it would require this sum to effect reinsurance of outstanding risks as of the second Monday of January, 1899, and it will be assumed that it would; but the relator does not claim that it had taken any

steps to employ this fund in procuring a reinsurance of its risks, or that it ever intended to reinsure any one of them, and, naturally, it would do nothing of the kind, for it is not an insolvent corporation, but a prosperous one, and being engaged in the insurance business would hardly part with profits which would accrue to such other companies as should reinsure its risks.

While it is apparent that the relator has not in fact "just debts owing by" it equal to fifty per cent of the unearned premiums, our attention is nevertheless invited to that portion of the General Insurance Law under which relator is organized, which provides the method by which the solvency or insolvency of a company is determined, and the point is made that for that purpose at least "a sum equal to the total unearned premiums on the policies in force" must be charged as a liability. True; and it also requires that for such purpose the capital stock shall also be charged as a liability. But it will not be claimed that the capital stock may be treated as a debt to be deducted from the company's assessable assets on that account, and of course no stronger argument can be made in support of a claim that the statute intended to have unearned premiums that are really an asset of the company treated as a debt for the purposes of assessment. But that question also was before the court and passed upon in the *Westchester Fire Insurance Company Case (supra)*. Section 178 of the Insurance Law is a re-enactment of certain of the provisions of chapter 110 of the Laws of 1880, and those provisions were before the court for consideration in that case, the question being whether such provisions affected the taxable character of unearned premiums, and the court said : "We can find no authority, either in the statute or the reported decisions of the court, to sustain such a conclusion. It was held by this court in the case of *People ex rel. The Manh. F. Insurance Company* v. *Commissioners of Taxes* (76 N. Y. 64) that none of the provisions of the various statutes included in chapter 466 of the Laws of 1853, chapter 563 of the Laws of 1854 and chapter 199 of the Laws of 1865, affected the status as

taxable property of premiums upon unexpired policies held by a fire insurance company. Chapter 110 of the Laws of 1880 falls within the reason of the same case and does not, therefore, affect the taxable status of such property."

It remains for us to consider whether the decision in *People ex rel. Glens Falls Ins. Co.* v. *Ferguson* (38 N. Y. 89) must be treated by us as a controlling authority, notwithstanding the fact that it is repugnant to the rule laid down by the later decisions, viz., that the only authority for making deductions from the gross value of the personal assets of either a corporation or an individual must be found in some statute. In the *Ferguson* case it was held that it is the duty of assessors to estimate the contingent liability of an insurance company upon outstanding policies of insurance in force by the usual rules for determining such liability, and to deduct the amount so found, in making the assessment of the company, for the purpose of taxation. That the views of the court in the *Ferguson* case were not shared by this court when it came to decide the *Westchester Fire Insurance Company Case* (*supra*) is apparent from an examination of the opinion, in which the court demonstrates that the contingent liability of an insurance company to refund some part of the premiums received by it does not constitute debt. In the course of the opinion the court said: "To say that such receipts constitute a trust fund held by an insurance company for the use of the policyholders, or that it is a liability of the company in any such sense as to constitute a debt entitled to be deducted from the sum of its property in determining the value thereof for assessable purposes, is contrary to reason, and is not sustained by any authority known to us." And, further, the court said: "The conclusion to which we have arrived on this branch of the case is the more gratifying for the reason that otherwise a vast amount of property held by insurance companies in the shape of so-called unearned premiums would altogether escape taxation. Such a result would produce manifest injustice."

That the view of the court in the *Westchester Fire Insur-*

*ance Company* case is diametrically opposed to that of the court in the *Ferguson* case is evident from an examination of the opinions in those cases, and it is also evident that the former is in harmony with the trend of recent decisions touching the right and duty of assessors in making assessments to make only such deductions as the statutes authorize. Hence the *Westchester Fire Ins. Co.* case rather than the *Ferguson* case should control. This should be so for the further reason that when the *Ferguson* case was decided the assessors were accustomed to proceed upon the assumption that in determining the actual value of the capital and surplus of corporations they were permitted to take as evidence of value the market value of the share stock, and that view was followed for a number of years. As a necessary result the value of personal property of corporations for the purpose of taxation was oftentimes affected by matters of a speculative nature, so that occasionally speculative values, to a large extent, were embraced in an assessment of the property of a corporation. This matter having been brought to the attention of the court, it was given careful consideration in *People ex rel. Union Trust Company* v. *Coleman* (126 N. Y. 433), which resulted in a decision that the subject of valuation in assessments is never the share stock of corporations; that it is always the company's actual capital and surplus which should be assessed at its actual value. From the time of that decision on, the principle governing the assessment of the personal property of corporations has been like that which obtains as to individuals, and the provision of the statute authorizing the deduction of "just debts owing," has been held to apply to both corporations and individuals, as will appear in a number of cases cited in the *Cornell Steamboat Co. Case* (*supra*). Notwithstanding the amendment of the statute in a respect pointed out in that decision, it was there held that the legislature had not intended to change the statute, and that it still affords a simple method for the taxation of corporations as well as individuals, by providing for a deduction of the debts that are owing by either.

The order should be affirmed.

O'Brien, J. (dissenting).   The relator procured a writ of certiorari to review the official action of the commissioners of taxes and assessments of the city of New York in assessing its capital stock and surplus.   The statute provides that the capital stock and surplus of a corporation liable to taxation, after making certain deductions specified, shall be assessed at its actual value.   The relator complains that the assessment in this case upon its capital stock and surplus was not limited to its actual value, but that it was assessed for an amount more than such value.   The question in the case involves the inquiry whether the assessors in making the assessment proceeded upon legal principles.   The relator asserts that in making the assessment the rules of law applicable in such cases were disregarded by the assessors and that in arriving at the actual value of the capital stock the taxing officers proceeded upon erroneous legal principles to the prejudice of the relator.   The relator claims that in determining the actual value of its capital stock, its outstanding obligations or policies of insurance should have been considered, and that there should have been deducted from the corporate property what is called the reserve fund or reinsurance reserve required by law, being the amount necessary to reinsure outstanding risks, or so much thereof as fairly represents the amount that the outstanding obligations of the relator diminished the value of its capital stock and surplus, which is a sum shown by experience to be the aggregate of the probable losses upon such obligations.   In other words, the relator's contention is that the assessors could not fairly value the capital stock or assets of the corporation without taking into consideration these outstanding liabilities.   There seems to be no dispute as to the fact that the relator's obligations in the form of policies and contracts of indemnity can be reduced by calculation and by the use of experience tables, to a sum practically certain, which would represent a fixed liability at the date of the assessment.   In other words, what may be called the present value of these outstanding liabilities may be ascertained at any given time and stated in the form of a fixed liability

at the date selected, with sufficient accuracy for all practical purposes. The assessors refused to make any deduction from the corporate assets on account of these liabilities. This appears very clearly from the return to the writ, in which it is explicitly stated that the relator claimed a deduction from the apparent value of the assets on account of unearned premiums held as reinsurance reserve as required by law, being the amount necessary to reinsure outstanding risks, and that such deduction was refused. It is further stated that the assessors were advised that the reserve, or unearned premiums, did not constitute a liability and that it had not been declared exempt from taxation by any law ; that the so-called reserve, or unearned premiums, was invested by the relator in interest-bearing and dividend-paying securities, from which a large income was derived, and that no liability could arise to refund the whole or any part thereof unless the policyholders canceled their policies ; that the policies had not been canceled nor was there any reason to believe or claim made that they would be canceled, except under certain contingencies that had not arisen at the date of the assessment.

It would seem to be an undisputable proposition that the capital stock of any corporation cannot be fairly valued for the purposes of taxation without taking into account all outstanding liabilities, contingent or otherwise, that affect the value of the capital stock, and it cannot be said with any propriety that outstanding policies of insurance or indemnity contracts issued by such corporations as the relator or by insurance corporations do not materially affect the actual value of the corporate assets at the date of the assessment. Irrespective of any express statute on the subject, the process of ascertaining the value of the capital stock of any corporation must necessarily include a deduction on account of its debts or of any outstanding, contingent liability such as insurance policies, though not due or payable at the time that the assessment is made. The statutes of this state provide methods for ascertaining the real financial condition of corporations of this character at any particular time and for various purposes. The

principle embodied in these statutes applies to the duty of assessors in ascertaining the value of the stock of such corporations for the purposes of taxation. We do not say that the methods indicated in these enactments must be adopted in all cases, but it would seem to be clear that some method must be adopted in the process of valuing the capital stock for ascertaining, as near as possible, the deductions to be made on account of such outstanding obligations. A fund held by this class of corporations to meet a liability certain to accrue and which can be ascertained with practical certainty, should not be included in all cases as a taxable asset. The General Insurance Law, under which the relator is organized and exists, contains provisions which reflect much light upon the question. It provides that every company whose assets and credits are not sufficient to reinsure its outstanding risks in a solvent insurance corporation, should be deemed to be insolvent. (§ 21.) It is also provided that in ascertaining the actual capital of foreign insurance companies seeking to do business in this state, the premiums on risks not yet expired shall be treated as a liability. (§ 27.) Also that the superintendent of insurance in estimating the condition of any life insurance corporation shall charge against it as liabilities, exclusive of capital stock, all outstanding indebtedness of the corporation and the premium reserve on policies and additions thereto in force, computing according to the table of mortality the rate of interest prescribed in the statute. (§ 86.) Also, that upon an examination by the superintendent of insurance into the affairs of a company there shall be charged to it, in addition to the capital stock and all outstanding claims, a sum equal to the total unearned premiums on the policies in force. (§ 178.) By chapter 720 of the Laws of 1893, which is an act relative to guarantors and sureties, and applicable to the relator, it is provided that in estimating the solvency of such companies there shall be charged as liabilities, in addition to the capital stock, all outstanding indebtedness of the company and the premium reserve equal to fifty percentum of the premiums charged by the com-

pany on all risks then in force.  It is clear from these provisions of law that in ascertaining the true financial condition of the relator, or other companies organized under the same law, a deduction must be made from the corporate assets on account of outstanding liabilities.  The relator offered to show before the assessors and at the hearing at the Special Term upon the writ the amount of such deductions in this case.  It requested the court, if necessary, to appoint a referee for that purpose, and on the record now before us we must assume that it was entirely practical to ascertain the amount of such deductions by the use of tables and the experience of similar corporations during a long series of years.  The premiums received by the relator up to the date of the assessment were included in the corporate assets, but no allowance was made for the fact that a portion of these premiums was not earned and that the contracts upon which they had been paid subjected the relator to liability for losses.  It would seem to be an erroneous method in estimating the value of the relator's capital stock on the day of the assessment to include all its taxable tangible assets without making any allowance whatever for losses which it might be made liable to pay on account of its outstanding contracts.  I think that this question is no longer an open one in this court, since it has been expressly decided that it is the duty of assessors in such cases to estimate the contingent liability of an insurance company upon its outstanding policies in force and to deduct such liability in arriving at the basis of taxation on its capital stock.  (*People ex rel. Glens Falls Ins. Co.* v. *Ferguson*, 38 N. Y. 89; *People ex rel. Manh. F. Ins. Co.* v. *Commissioners of Taxes*, 76 N. Y. 64.)   In the opinion of the learned judge at Special Term, which was adopted by the court on appeal, it is expressly stated that the case first cited, if it is still law, is conclusive upon the question involved in this appeal.  It was suggested, however, that the authority of the case was destroyed by the subsequent decision of this court in the case of *People ex rel. Union Trust Co.* v. *Coleman* (126 N. Y. 433).  We are unable to see how this last decision affects in any way the authority of the former one.  On the contrary,

it seems to confirm it. The question involved in the latter case was whether the assessors had the right to estimate the actual value of the company's capital stock according to the market value of the shares, disregarding all other conditions which might appear to show that the market value was not the true value. What this court held was that the assessors were not to be controlled by the market value of the stock. In the opinion the learned judge refers to the *Ferguson Case* (38 N. Y. 89) in connection with two other cases and says of them : " They relate to the permitted deductions and exemptions and can scarcely be said to bear upon our present inquiry except inferentially, and the inferences which they suggest are certainly not in the direction of the right to value the share stock instead of the capital." The inference is clear from these remarks that the learned judge did not consider that he was running counter to anything decided as to the right to deduct liabilities from assets, which was the point involved in the former case. There is not, in our opinion, the slightest conflict between the two cases. They involve different questions. In the earlier case the only question involved was that now under consideration, viz. : the right to deduct from assets a sum which would represent at the date of the assessment outstanding liabilities. In the latter case the question was whether the value of capital stock could be estimated for the purposes of taxation upon market value and the decision was that the true method of valuation was to ascertain the value of the corporate assets and to deduct therefrom corporate debts ; the balance would represent the true value of the stock, whether more or less than the market value. That decision is not in conflict with the contention of the relator in this case, but, on the contrary, sustains it. In the *Coleman* case this court undertook to harmonize apparently conflicting decisions concerning the method of ascertaining the value of the capital of a corporation for the purposes of taxation and to formulate a reasonable and rational rule upon that subject. The case of *People ex rel. Westchester F. Ins. Co.* v. *Davenport* (91 N. Y. 574) is not in conflict with these views. In that case it seems that the record pre-

sented no data or facts for determining whether more or less than fifty per cent of receipts for premiums upon unexpired policies was deducted. The court said : " We have no evidence before us which shows that the assessors did not deduct from the conceded assets of the relator all that it was entitled to have deducted on account of its contingent liabilities. \* \* \* It was held by this court in the case of *People ex rel. Glens Falls Ins. Co.* v. *Ferguson* (38 N. Y. 89) that when the assessors absolutely refused to deduct any sum from the assessment for personal property of an insurance company on account of its contingent liability to refund unearned premiums, that they erred, and that such liability should be taken into account in arriving at the actual value of its assessable property." It will be seen that the court in that case did not refuse to approve of the doctrine announced in the *Ferguson* case, for instead of being in conflict with it, the doctrine there stated is approved. It follows that the relator was entitled to give proof before the assessors and before the court at Special Term concerning the proper amount which should be deducted from the value of the assets on account of the outstanding obligations. The court had power to take this proof or to order a reference, in its discretion, but since it refused to do either, the orders of the Appellate Division and the Special Term should be reversed, with costs, and the proceedings remitted to the Special Term for further hearing.

BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur with PARKER, Ch. J., for affirmance; LANDON, J., concurs with O'BRIEN, J., for reversal.

Order affirmed, with costs.